2011 Ark. 40

**James R. BABER, Appellant**

v.

**Pamela P. BABER, Appellee.**

No. 10–285.

Supreme Court of Arkansas.

Feb. 9, 2011.

Brian G. Brooks, Attorney at Law, PLLC, by: Brian G. Brooks, for appellant.

Barry E. Coplin and Jocelyn A. Stotts, for appellee.

JIM HANNAH, Chief Justice.

Appellant James R. Baber appeals from the Pulaski County Circuit Court's order granting appellee Pamela P. Baber's motion for modification of visitation to the parties' children, denying appellant's motion to reduce child support, and awarding appellee attorney's fees. On appeal, appellant contends that the circuit court erred in modifying visitation because it failed to consider the best interests of the children and modified visitation for the sole purpose of "punishing" him for violating the divorce decree. He also contends that the circuit court erred in denying his motion to reduce child support because it failed to consider his tax returns when determining

his income. Finally, appellant contends that, because he should have prevailed on his claims before the circuit court, the circuit court erred in awarding attorney's fees to appellee. We affirm the circuit court's order.

The parties were divorced by a decree of the circuit court entered on September 19, 2008. Their property settlement agreement was incorporated, but not merged, into the decree. Appellant was ordered to pay child support in the amount of $2700 per month. Appellee was granted custody of the parties' two children, and appellant was granted visitation. The decree provided that appellant would not consume drugs or alcohol at any time during visitation periods and that appellee was entitled to deny appellant visitation with either child if she suspected that he was under the influence of drugs or alcohol. Subsequent to the entry of the decree, the parties filed various motions, two of which are relevant to the instant appeal—appellee's motion to modify visitation and appellant's motion to modify spousal and child support.

## I. Motion to Modify Visitation

On April 27, 2009, appellee filed a motion to modify visitation, contending that material changes in circumstances had occurred since the parties last appeared before the circuit court and that these changes warranted the court's placing restrictions on appellant's visitation. In her motion, appellee made the following allegations: (1) appellant tested positive for THC on August 19, 2008; (2) appellee had reason to believe that appellant submitted himself to drug and alcohol tests in conjunction with the medical review board's suspension of his medical license and, although appellee requested copies of the tests from appellant, appellant refused to furnish the results to her; (3) appellee was

contacted by a female friend of appellant's who informed her that appellant was not sober; (4) appellant admitted to drinking alcohol during his visitation with the parties' son, despite a provision in the parties' settlement agreement that prohibited appellant from drinking alcohol at any time during his visitation periods; (5) appellant has stated that his consumption of alcohol is not a problem and has expressed his intent to continue drinking alcohol; (6) appellant has exercised his visitation rights sporadically; and (7) appellant sent the parties' minor son home with third parties, who were strangers to their son and to appellee, rather than meet appellee at a public location to exchange him for visitation, and appellee was concerned that appellant avoided the visitation exchange to prevent her from observing that he was under the influence of drugs or alcohol. Appellee added that, based upon appellant's history of drug and alcohol abuse and the foregoing events, she suspected that appellant was under the influence of drugs or alcohol and therefore suspended his visitation pursuant to the parties' settlement agreement.

Appellant responded and denied that material changes in circumstances existed to warrant a modification of visitation. Specifically, he denied that his medical license was suspended or that it was suspended due to drug and alcohol use, denied that he consumed alcohol while the minor children were present, and denied that he was attempting to avoid a visitation exchange with appellee when he allowed his son to ride with friends. Pleading affirmatively, appellant asserted that appellee had unreasonably suspended visitation in violation of the divorce decree for the sole purpose to harass, embarrass, and punish him and asserted that she should be held in contempt of court. He further asserted that he should be given unqualified visitation to the children.

At a hearing on the motion, evidence was introduced that on October 6, 2008, appellant entered a drug-and-alcohol-treatment program at Talbott Recovery in Atlanta, Georgia, and was discharged from treatment on January 3, 2009. Julia Marable testified that she and appellant consumed alcohol together the same day he returned from treatment. She further testified that, over the next three weeks, she saw appellant every day, and they drank alcohol every day. Marable stated that, at times during the three weeks they spent together, appellant used marijuana. Marable also related that, during that time, appellant drove after consuming alcohol and that, when people came over to appellant's house, she hid alcohol in a recycling bin in the garage, per appellant's instructions. Admitted at the hearing, over appellant's objection, were two photographs; one was a photo of appellant and Marable, and the other was a photo of another individual and appellant, who was holding a beer bottle. Marable testified that, at the time the photographs were taken, she and appellant were at someone's house to purchase marijuana. Both photographs bore a date stamp of January 19, 2009, and Marable testified that the date accurately reflected when the photographs were taken.

Appellee testified that, immediately after the divorce, per the parties' agreement, appellant presented her with an evaluation from the Palmetto Treatment Center and the results of a drug screen. Appellee stated that the drug screen was positive for marijuana and that the evaluation indicated that appellant needed intensive, inpatient treatment. Appellee stated that, after seeing the positive drug screen and the evaluation, she was unwilling to send the children to appellant for unsupervised visitation, so some of appellant's family members supervised visitation.

Later, appellant informed appellee that he was entering inpatient treatment at Talbott Recovery Center. Appellee stated that, while there, appellant received periodic leaves from treatment and saw the children in Little Rock and in Fayetteville. She also stated that, as soon as appellant was discharged from treatment, he immediately exercised alternate weekend visitation.

Appellee testified that Marable contacted her via text messages and a Facebook message and told her that appellant was not sober and that he was worse after treatment. Appellee stated that she contacted appellant about Marable's statement and that, while she had reason to believe that Marable might have had some mental-health issues, she had no reason to doubt what Marable was telling her. Appellee also related that she was upset that appellant had allowed their son to be transported for visitation by an individual that she did not know.

Paul James testified that he had known appellant for many years and that, in the past nine months, he had worked with appellant on cases and interacted with him on a daily basis. He stated that, in the past, he thought appellant might have been impaired by drugs or alcohol, but he did not believe appellant currently had any problems with "impairment." He also testified that, while he saw appellant in person on occasion, most of his communication with appellant was by telephone or e-mail.

Nancy Ogden, who met and began dating appellant in January 2009, testified that she had not observed appellant using any illegal or illicit drugs and had not observed appellant consume alcohol to the point of intoxication. She also testified that she had never observed appellant drinking alcohol when his son was visiting.

Appellant testified that he is a recovering alcoholic. He disputed Marable's ac-

count of the events that took place when he returned from treatment, stating that she was "a lush and a drug addict." He admitted that he had "a couple of beers" at his home while his son was visiting. He stated that his son was asleep at the time, that he did not drink to the point of intoxication, and that he did nothing to jeopardize his son's safety. Appellant further testified that he was not aware that the divorce decree contained a provision prohibiting him from drinking alcohol when the children were visiting. Appellant stated that he did not regularly attend Alcoholics Anonymous meetings and that, while he had seen a local counselor for his addiction problems, he had to stop going because he could no longer afford the counselor's fees. Appellant further stated that he could not remember the name of the counselor he had seen. When asked if he would "rather not have visitation at all with [his] children rather than have it in Little Rock at a public location," appellant responded:

> That's my—my testimony is I'll—it's not appropriate and I will not comply with babysitting them for two hours at lunch or whatever. I'm not—that's not—now when I was coming to town and they were—we'd get a place at the hotel and march the ducks in and out and ride the trolley down to the—you know, have a pizza and stuff like that, that, of course, I would do every chance I got. But to— to be treated like a child, I'm not going to do it.

In a letter opinion dated November 9, 2009, the circuit court made the following findings:

> Dr. Baber has clearly violated the terms of the Decree of Divorce and Property Settlement Agreement by consuming alcohol while he had his son in his care for weekend visitation.

Dr. Baber has an alcohol problem and has experienced problems with other drugs. This was the basis for the prohibition against alcohol use in the decree. Dr. Baber entered a drug/alcohol treatment program at Talbott Recovery on October 6, 2008. I have reviewed those treatment records which are under seal. Dr. Baber admitted that he has an alcohol problem and professed a desire to deal with this problem. He was recommended to follow a treatment regimen which called for continued therapy, a 12–step program such as Alcoholics Anonymous and of course, no alcohol or drug use. Dr. Baber did not follow this plan. He immediately started drinking upon his release from Talbott and engaged in a course of alcohol and drug use upon his return to Fayetteville. The photo of Dr. Baber holding a beer where it was alleged he and Ms. Marable had gone to purchase marijuana is unrefuted. Dr. Baber denied the allegations of Ms. Marable, but her credibility is much greater, unfortunately, than that of Dr. Baber. She admits her problems. Dr. Baber continues to deny his problems associated with alcohol use and expects this court to believe his contradictory and incredible story regarding this issue.

Dr. Baber said all the "right things" during his Talbott stay, but upon release, did not do as he said he would. Dr. Baber did not continue in therapy. He could not remember the name of the therapist he supposedly saw. I find that unbelievable in that Dr. Baber is extremely bright. He has selective recall on issues he wishes to discuss or pursue, and is unable to remember those details he does not wish to discuss or face. Dr. Baber has failed to follow through with the recommended 12–step treatment program. Dr. Baber stated at the September hearing he was unaware of the

alcohol prohibition in his decree. That is unbelievable. Dr. Baber clearly knew of this prohibition, was in the courtroom when the parties' agreement was read into the record and on September 12, 2008, signed the Property Settlement Agreement containing this prohibition against alcohol use when the children were in his care. As a lawyer, I find his statement that he had not read his divorce decree to be incredible and totally unbelievable.

Mrs. Baber was well within her rights as a concerned parent to stop visitation until she could assure herself there was no problem with drug or alcohol use. She had received telephone calls from Ms. Marable alleging drug and alcohol use by Dr. Baber. Mrs. Baber requested drug screen test results which were not forthcoming. Dr. Baber sent [J.B.] home with someone unknown to Mrs. Baber or the child. Dr. Baber surrendered his medical license to avoid further scrutiny by the Arkansas State Medical Board. Dr. Baber admitted to drinking when [J.B.] was in his care during a visitation weekend. All of these factors caused Mrs. Baber to be gravely concerned about the safety of [J.B.] Dr. Baber refused offers of Mrs. Baber to see the children under a controlled or supervised situation. Dr. Baber never filed any motion with this court seeking relief due to the suspension of his visitation by Mrs. Baber. Mrs. Baber filed a motion on April 27, 2009, requesting visitation parameters be set in order to ensure the safety and well being of the children. Dr. Baber responded by denying alcohol consumption while the children were present. He alleged the motion by Mrs. Baber was unreasonable and malicious. Further, Dr. Baber alleged this court allows Mrs. Baber to feel comfortable filing unreasonable and malicious motions in that this court allows such motions. At the hearing held September 8, 2009, Dr. Baber admitted to consuming alcohol when [J.B.] was in his care in violation of the decree. He admitted to drinking alcohol in his answer and at the hearing. This consumption of alcohol is totally against everything he had stated he would do upon his release from Talbott Recovery. Alcohol consumption by Dr. Baber flies in the face of his treatment plan. Nowhere in his treatment plan is there a provision for ingesting "alcohol minimally."

As a result of Dr. Baber's willful violation of the divorce decree and his continued consumption of alcohol, Dr. Baber's visitation will be supervised by Mrs. Baber or someone of her choice until such time as Dr. Baber can demonstrate a sincere effort at, and an extended period of, sobriety.... Dr. Baber is not to drive with the children until further order of this court. Dr. Baber is not to have unsupervised visitation until such time as he petitions this court for a modification of visitation.

We now consider appellant's contention that the circuit court erred in modifying visitation. Appellant admits that he consumes alcohol, that he has received inpatient treatment for alcohol abuse, and that he drank alcohol at a time when his son was visiting. He states that he drank two beers at his birthday party after his son had gone to bed, and he concedes that this action was a mistake that he should not have made and will not make again. Appellant also admits that he violated the divorce decree when he consumed alcohol when his son was visiting. Still, appellant contends that the circuit court's order modifying visitation must be reversed because the circuit court altered visitation as a sanction for his violation of the decree with no consideration whatsoever of

changed circumstances and the best interests of the children.

■ In reviewing domestic-relations cases, appellate courts consider the evidence de novo. *E.g., Hass v. Hass*, 80 Ark. App. 408, 97 S.W.3d 424 (2003). We will not reverse the circuit court's findings unless they are clearly erroneous. *Id.* When the question of whether the circuit court's findings are clearly erroneous turns largely on the credibility of the witnesses, we give special deference to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest. *See, e.g., Ford v. Ford*, 347 Ark. 485, 65 S.W.3d 432 (2002).

■ A circuit court maintains continuing jurisdiction over visitation and may modify or vacate those orders at any time when it becomes aware of a change in circumstances or facts not known to it at the time of the initial order. *E.g., Martin v. Scharbor*, 95 Ark. App. 52, 233 S.W.3d 689 (2006). Although visitation is always modifiable, to promote stability and continuity for the children and to discourage repeated litigation of the same issues, courts require more rigid standards for modification than for initial determinations *E.g., Meins v. Meins*, 93 Ark. App. 292, 218 S.W.3d 366 (2005). Thus, the party seeking a change in visitation has the burden to demonstrate a material change in circumstances that warrants such a change. *E.g., Hass, supra.*

■ The primary consideration regarding visitation is the best interest of the child. *Id.* Important factors the court considers in determining reasonable visitation are the wishes of the child, the capacity of the party desiring visitation to supervise and care for the child, problems of transportation and prior conduct in abusing visitation, the work schedule or stability of the parties, and the relation-

ship with siblings and other relatives. *Id.* Fixing visitation rights is a matter that lies within the sound discretion of the circuit court. *Id.*

■ Upon review of the circuit court's findings, we are not persuaded by appellant's assertion that the circuit court modified visitation for the sole purpose of "punishing" him. When the divorce decree was entered, appellant, who had a history of drug and alcohol abuse, agreed to abstain from using drugs and alcohol while his children were visiting. He completed treatment at Talbott Recovery and, based on the record of his stay there, demonstrated a desire to be drug and alcohol free. But evidence at the hearing showed that appellant was no longer committed to abstaining from drugs and alcohol. Marable testified that she and appellant drank alcohol together the day he arrived home from treatment and continued to drink alcohol together every day for the next three weeks. She also stated that appellant used marijuana when they were together. Finally, in violation of the divorce decree, appellant admitted that he consumed alcoholic beverages when his son was visiting. This evidence demonstrated a material change in circumstances.

■ After reviewing the numerous findings in the letter opinion, we are convinced that the circuit court considered the best interests of the children when it modified visitation. It appears that appellant would have us require the words "best interests of the children" in all orders modifying visitation. Where, as in this case, it is clear to us that the circuit court considered the best interests of the children, we will not require the use of those magic words. *See, e.g., Guest v. San Pedro*, 70 Ark. App. 389, 394, 19 S.W.3d 62, 65 (2000) (stating that the court would not require use of the words "best interest of the child" when it was obvious that the chancellor considered

the child's best interest). The circuit court heard evidence of appellant's continued use of drugs and alcohol, along with appellant's own testimony about his failure to comply with the order prohibiting him from using drugs or alcohol during visitation. Based upon its concern for the children's safety, the circuit court modified visitation to require that appellant's visitation with his children be supervised. We hold that the circuit court did not err in modifying visitation.

## II. *Motion to Modify Support*

■ In his motion to modify spousal[1] and child support, appellant claimed that, after the divorce decree was entered, a change in circumstances had occurred that required modification of support. Appellant averred that, at the time of the divorce decree, he was ordered to pay for the minor children's health insurance in the amount of $477 per month, one-half of the children's private school tuition, in the amount of $513.33 per month, and child support in the amount of $2700 per month. He added that spousal support was set at $428.95 per month for the marital home's second mortgage and that he had a duty to pay off the balance of approximately $55,000. He further asserted that, in the divorce decree, he assumed all of the significant debts and appellee was awarded all of the significant assets. Appellant, who held both a medical license and a law license, stated that, when the divorce decree was entered, he had several promising law cases, but that the two recoveries since the divorce had gone toward retiring debt and paying medical bills. He asserted that, because drug testing was down 40% at his business, Baber Medical Review Services, his salary had decreased and his net monthly income was currently $5706.

He also averred that his personal living expenses were approximately $4500 per month, and that "other than personal property and transportation," he had no tangible assets. Appellant further averred that he had been forced to discontinue payment of all unsecured credit and tax payments and that he had contacted an attorney to pursue bankruptcy if he was unable to obtain immediate relief from his support obligation. Appellant requested that the circuit court modify child support to 21% of his net monthly income from his medical review practice and that the circuit court relieve him from all spousal support obligations. He also requested that he be allowed to pay 21% of each net recovery on future lawsuits in his law practice.

Appellee responded, denying that appellant's salary had decreased and that a material change in circumstances required the modification of the support order. Appellee asserted that appellant was a self-employed individual, and Administrative Order No. 10 requires that his income be calculated on the last two years' federal and state income tax returns and quarterly estimates for the current year. In addition, claiming that the requested relief was contrary to Administrative Order No. 10 and subject to manipulation by appellant, appellee also objected to appellant's requested relief of paying 21% of net recovery on future lawsuits in his law practice.

At a hearing on the motion, appellant's 2007 and 2008 federal and state tax returns and his bank account statements were admitted into evidence. Appellee testified that she had reviewed the tax returns and bank statements and that she believed appellant's gross income was more than he reported on his tax returns. She stated that the parties had used "the

---

1. Although the circuit court denied appellant's motion to modify both spousal support and child support, appellant appeals only the denial of his motion to modify child support.

same kind of documents" when deriving figures for the original agreement. Noting that appellant prepares his own taxes, appellee stated that appellant told her "all it has to be is arguable, any figure you put in your tax returns."

Based on her review of appellant's bank statements, appellee prepared a summary and compilation comparing appellant's 2008 income with his 2007 income, and the summary was admitted as evidence, over appellant's objection. Appellee asserted that appellant's net take-home pay for 2008 was $218,462 and that his monthly take-home pay was $18,212. She asserted that his net take-home pay for 2007 was $119,350 and that his monthly take-home pay was $9,945.

Appellant testified that he prepared his own tax returns and that he did not under-report his income on the returns. He stated that his income and deductions on his 2007 and 2008 state and federal tax returns were accurate. Appellant testified that his taxable income for 2007 was $99,587 and his taxable income for 2008 was $102,854. He stated that he added those two figures together and divided the sum by twenty-four to determine an average monthly income of $6,353 subject to child support. Appellant stated that he then multiplied $6,353 by .21 to determine that he should pay child support in the amount of $1334 per month. Appellant also submitted an affidavit of financial means where he represented that, as of August 31, 2009, his present net monthly income was $13,933.[2]

Paul James, who worked with appellant on medical malpractice cases, testified about fees due to appellant. He stated that, for his work on one of their cases, appellant was due $90,000 in fees and $19,598.15 in expenses, but he was unable to say when appellant would be paid.

The circuit court denied appellant's motion to decrease child support, finding that Dr. Baber has not proven, by a preponderance of the evidence, that he is entitled to a reduction. Any decrease in Dr. Baber's income, if there is one, is due to his actions or inaction, as the case may be. The only evidence of any reduction of income comes from the testimony of Dr. Baber. Dr. Baber's testimony is not credible on any number of issues, especially his alleged reduction in income.

Appellant asserts that the circuit court erred in denying his motion to reduce child support because it failed to consider his tax returns when determining his income, in violation of Administrative Order No. 10, section (III)(c). Appellee responds that the circuit court indicated that it considered appellant's income capabilities, as well as other financial information, and that appellant's own affidavit of financial means and all of the other financial records support the circuit court's decision to deny appellant's request to decrease his child-support obligation.

A party seeking modification of a child-support obligation has the burden of showing a material change of circumstances sufficient to warrant the modification. *E.g., Morehouse v. Lawson,* 94 Ark. App. 374, 231 S.W.3d 86 (2006). In determining whether there has been a change in circumstances warranting an adjustment of support, the circuit court should consider remarriage of the parties, a minor's reaching majority, change in the income and financial conditions of the parties and families, ability to meet current and future obligations, and the child-support chart. *E.g., McGee v. McGee,* 100

---

**2.** In the divorce decree, entered September 19, 2008, the circuit court found appellant's average net income was approximately $13,175 per month.

Ark. App. 1, 262 S.W.3d 622 (2007). A circuit court's determination as to whether there are sufficient changed circumstances to warrant a modification is a finding of fact, and we will not reverse this finding unless it is clearly erroneous. *Morehouse, supra.* In reviewing a circuit court's findings regarding child support, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *McGee, supra.*

In the instant case, after hearing testimony and considering the evidence submitted by the parties, the circuit court determined that appellant had failed to meet his burden of showing a material change in circumstances sufficient to warrant the modification. The circuit court found that the only evidence of a reduction in income came from the testimony of appellant himself. Moreover, the circuit court found this testimony unreliable. We have examined the evidence in the record, and we conclude that the circuit court did not clearly err in determining that circumstances were not sufficiently changed to warrant a modification of appellant's child-support obligation.

### III. *Attorney's Fees*

Appellant asserts that the circuit court's award of attorney's fees should be reversed. The circuit court awarded appellee attorney's fees in the amount of $6000,[3] finding that appellee had prevailed on a majority of the issues pending before and decided by the court. Appellant states that a reading of the hearing transcript and the relevant pleadings reveals that the only truly contested issues were child support and visitation and, as he argued on appeal, he should have prevailed on both issues. Therefore, appellant contends that he, not appellee, should be awarded attorney's fees. Having determined that the circuit court did not err in granting appellee's motion for modification of visitation and in denying appellant's motion for modification of support, we do not agree that appellant should have prevailed on both issues.

In domestic-relations proceedings, the circuit court has the inherent power to award attorney's fees, and the decision to award fees and the amount thereof are matters within the discretion of the circuit court. *E.g., Artman v. Hoy,* 370 Ark. 131, 257 S.W.3d 864 (2007). *See also* Ark.Code Ann. § 9–12–309 (Repl. 2009) (attorney's fees in domestic-relations matters). Absent an abuse of that discretion, an award of attorney's fees will not be disturbed on appeal. *E.g., McKay v. McKay,* 340 Ark. 171, 8 S.W.3d 525 (2000). We find no abuse of discretion and affirm the award of attorney's fees.

Affirmed.

Special Justice MIKE WILSON joins.

CORBIN, J., not participating.

---

**3.** Appellant does not specifically challenge the amount of attorney's fees awarded.