

Cite as 2017 Ark. App. 370

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-17-2

|  |  |
|---|---|
| | Opinion Delivered June 7, 2017 |
| TONYA MASON (F/K/A ROBERTSON) | APPEAL FROM THE WHITE COUNTY CIRCUIT COURT |
| APPELLANT | [NO. 73DR-08-163] |
| V. | HONORABLE CRAIG HANNAH, JUDGE |
| JONATHAN CHRIS ROBERTSON | |
| APPELLEE | AFFIRMED |

## BRANDON J. HARRISON, Judge

Tonya Mason appeals the circuit court's order setting visitation and child support. She argues that the circuit court erred in (1) finding that she is required to have a nanny present for visitation with her son, L.R.; (2) limiting her to one additional visitation per month with her son; and (3) finding that her ex-husband, Jonathan Robertson, expends $3900 per month in extraordinary expenses for L.R. We affirm.

The parties divorced in August 2008 after an eight-year marriage, and they have two children: eight-year-old L.R., an autistic child with special needs, and two-year-old J.R. The parties were awarded joint legal and physical custody of L.R.; they were also awarded joint legal custody of J.R., but Mason received primary physical custody of J.R. Robertson was ordered to pay $4000 monthly in child support for J.R. He was also ordered to pay up to $3000 per month for fees associated with L.R.'s nanny care regardless of which party was taking care of L.R.

Over the next several years, the parties continued litigating issues of custody, child support, and contempt, and in December 2012, an agreed order was entered establishing Robertson as L.R.'s primary physical custodian. Mason was awarded visitation with L.R. on alternating weekends from 12:30 p.m. to 4:30 p.m. on Saturday or Sunday. The order provided that Robertson "will provide services of his Nanny for the visitation and will pay for the cost, including transportation. If for some reason there is an emergency and their Nanny is unavailable, [Robertson] will promptly notify [Mason] and will reschedule the visitation[.]" Regarding child support, the parties agreed to deviate from the child-support chart "based on the extraordinary medical expenses incurred on behalf of [L.R.]." Mason's child-support obligation was $487 per month; however, this was offset against Robertson's child-support obligation, leaving him responsible for child support in the amount of $2200 per month.

The current round of litigation began in January 2015, when Robertson petitioned to modify his child-support obligation. Over the next thirteen months, the parties filed multiple petitions for contempt, motions to compel, and requests for modification of visitation and child support. The circuit court held a hearing in March 2016, and after receiving testimony and arguments from counsel, the court found,

> [W]e're going to reduce [Robertson's] monthly income by $3,900 because of the extraordinary expenses that he incurs with the parties' autistic son, which included such expenses as the nanny expenses, the pull-ups, the money spent driving him around, some Sunshine School expenses, some positive reinforcers, sensory supplies, the insurance expense, a small allowance for repairs that are going to have to be made periodically to the home because of the son's disability, and a small allowance for some additional expenses for vacation.

The court also found that Mason could request additional visitation, with two weeks' prior notice, but advised her to exercise her visitation on schedule as much as possible. The court stated several times that the parties "have got to learn how to communicate. You have got to follow the order." Mason also raised the possibility of hiring her own nanny instead of relying on the availability of Robertson's nanny for visitation, and the court stated, "If you can show me that it won't harm this child to do that, then I won't have a problem with it."

The court entered a written order in August 2016 that included the following findings:

> 8. That Defendant must provide two (2) weeks advance notice to Plaintiff when requesting additional visitation. In the event a nanny is unavailable for Defendant's requested date, Plaintiff must make the minor child and nanny available at the soonest available time. Defendant may only exercise one (1) additional visitation per month and that visitation is not to be used to replace a missed visitation.
>
> . . . .
>
> 10. From the testimony taken in Court has found [sic] that the Plaintiff expends an average of $3,900.00 each month for extraordinary expenses regarding the minor child, [L.R.]. Those expenses are for the payments to nannies, pull-ups, Sunshine Academy tuition, gas for driving the minor child around to soothe him, positive reinforcement tools, medical insurance, medical costs, repairs to the home caused by the minor child and cost of additional care for vacation. The Court arrived at this number by taking an average of those expenses over the last three (3) years. The Court finds that the Plaintiff is entitled to a reduction in his child support of forty-five percent (45%) of said amount.
>
> Going forward, the Parties should use a rolling three (3) year average dropping off the latest year and adding the current year to adjust the $3,900.00 amount. The $3,900.00 a month cannot exceed or be lowered by six percent (6%) increase annually without either Party requesting further relief from the Court.
>
> This Court has found that the Plaintiff has gross income for 2015 of $520,433.00 and is entitled to allowable deductions totally [sic] $175,650.00

leaving him a take-home pay per month of $28,686.00 which translates to a child support obligation of $4,250.00 for him less an imputed child support obligation of the Defendant of $623.00 ($65,000.00 gross minus 25% for taxes). From that the Court deducts forty-five percent (45%) of the $3,900.00 average for special expenses leaving a child support obligation to the Plaintiff for the minor child, [J.R.], of $1,950.00 effective May 1, 2016.

Mason has timely appealed from this order.

The same standard of review applicable to the modification of custody applies to the modification of visitation. We consider the evidence de novo. *Baber v. Baber*, 2011 Ark. 40, 378 S.W.3d 699. We will not reverse the circuit court's findings unless they are clearly erroneous. *Id.* When the question of whether the circuit court's findings are clearly erroneous turns largely on the credibility of the witnesses, we give special deference to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest. *Id.*

Mason first argues that the circuit court erred in finding that she is required to have a nanny present for visitation with L.R. As noted above, the 2012 agreed order provided that Robertson "will provide services of his Nanny for the visitation and will pay for the cost, including transportation. If for some reason there is an emergency and their Nanny is unavailable, [Robertson] will promptly notify [Mason] and will reschedule the visitation[.]" At the March 2016 hearing, Mason argued that this language did not require a nanny to be present for visitation, but the court disagreed and said, "my understanding of that order was that the nanny was going with the minor, because it was necessary. . . . I interpreted the order to mean that he was paying for it because of the autism, that the nanny was going."

Mason now argues that this interpretation "denies [her] access to her child unless her former husband provides nanny services for the visit." She contends that she has never been

SLIP OPINION

found unfit and that the court never made a finding that L.R. requires the services of any specialized caregiver. Therefore, she argues, the court's imposition of the nanny requirement is not supported by any change in circumstances and was an abuse of discretion.

We disagree with Mason's argument. First, the 2012 order essentially states that a nanny shall be present when Mason exercises visitation, otherwise it will be rescheduled, and Mason agreed to that. Thus, the circuit court did not err in interpreting the 2012 order to require a nanny to be present for Mason's visitation with L.R. It is true that Mason is not an unfit parent, and the circuit court may not have made a specific finding about a "specialized caregiver," but it did mention more than once the importance of consistency when dealing with an autistic child and that "it really needs to be the same nanny if at all possible." Finally, contrary to Mason's assertion, the circuit court was open to the possibility of Mason hiring her own nanny for visitations if Mason can show that it will not negatively affect L.R. Thus, we hold that the circuit court did not clearly err in its ruling.

Mason next argues that the circuit court erred in limiting her to one additional visitation per month. The 2012 agreed order provided that Mason "may have additional visitation as agreed upon by the Parties" and that Mason would pay the cost of the nanny for the additional visitation. At the March 2016 hearing, the circuit court stated that it was modifying the provision on the additional visitation because the parties could not "communicate well enough just to say additional visitation if you ask and it's agreed upon." As explained above, the court found that Mason could request additional visitation two weeks in advance, but the court made clear that it did not want this additional visitation to be used to make up missed visitation: "[I]f every time she misses then she asks for this

additional visitation, I'm going to frown upon that. I'm going to come back and say no, that's not right. . . . I just don't want that to be on a consistent basis; every time I miss I'm going to ask for additional visitation." The written order allowed Mason one additional visitation per month and noted that "that visitation is not to be used to replace a missed visitation."

Now, on appeal, Mason argues that there was no finding in the August 2016 order that "justified these modifications to the Court's previous orders regarding additional visitations," so the court clearly erred. But Mason's argument ignores the primary reason for the modification: the parties' inability to communicate, on which the court made clear findings. For example: "I don't think the parties can communicate well enough just to say additional visitation if you ask and it's agreed upon." "I think both of you have been disingenuous to this Court on a lot of things, because you-all don't like each other. That's real clear. You-all cannot communicate." "I don't know exactly what's going on, but you cannot communicate. So common sense kind of goes out the window and all we're left with is this order, and we have to hold everyone's feet to the fire and follow it as closely as possible[.]"

A circuit court maintains continuing jurisdiction over visitation and may modify or vacate those orders at any time when it becomes aware of a change in circumstances or facts not known to it at the time of the initial order. *Baber, supra*. The primary consideration regarding visitation is the best interest of the child. *Id*. Important factors the court considers in determining reasonable visitation are the wishes of the child, the capacity of the party desiring visitation to supervise and care for the child, problems of transportation and prior

6

conduct in abusing visitation, the work schedule or stability of the parties, and the relationship with siblings and other relatives. *Id.* Fixing visitation rights is a matter that lies within the sound discretion of the circuit court. *Id.* Considering this standard of review on setting visitation and the circuit court's numerous findings on the parties' inability to communicate, we affirm the circuit court's ruling.

For her final point on appeal, Mason asserts that the circuit court erred in finding that Robertson expends $3900 per month in extraordinary expenses for L.R. As noted above, the parties agreed in 2012 to deviate from the child-support chart based on the "extraordinary medical expenses" that Robertson incurred on behalf of L.R. That order noted that the parties "deducted the cost for insurance ($718.00 per month), one-half (1/2) of the costs for nannies, other than monies paid to Plaintiff's spouse for [L.R.]'s care ($700.00 per month), and one-half (1/2) of over the counter medications, diapers, and other items required for [L.R.]'s care (an agreed upon estimate of $150.00 per month)." These expenditures totaled $1568 per month.

In January 2015, Robertson asked that his child-support obligation be further reduced or eliminated because his expenses for L.R. had increased. At the March 2016 hearing, Robertson testified and introduced an exhibit detailing his expenses for L.R., including the nanny, Pull-Ups, bathroom supplies, pool care, clothes, positive reinforcers, and sensory supplies, which he said totaled over $4400 per month.

The court decided to credit Robertson with $3900 in extraordinary expenses, specifically for "payments to nannies, pull-ups, Sunshine Academy tuition, gas for driving the minor child around to soothe him, positive reinforcement tools, medical insurance,

SLIP OPINION

medical costs, repairs to the home caused by the minor child and cost of additional care for vacation." The court explained that it arrived at this number by taking an average of those expenses over the last three years and that the parties should use a rolling three-year average of these expenses to adjust the $3900 amount each year. Ultimately, Robertson's child-support obligation was reduced from $2200 to $1950.

On appeal, Mason argues that the court's order is not supported by the evidence and lacks specificity. We disagree. The court's order was supported by Robertson's testimony and the exhibits introduced at the hearing, and the court specified which expenses were included in its computation. In child-support determinations, the amount of child support lies within the sound discretion of the circuit court, and the lower court's findings will not be reversed absent an abuse of discretion. *Ward v. Doss*, 361 Ark. 153, 205 S.W.3d 767 (2005). We hold that the circuit court did not abuse its discretion in this case and affirm.

Affirmed.

VAUGHT and BROWN, JJ., agree.

*Dodds, Kidd & Ryan*, by: *Catherine A. Ryan*, for appellant.

*Robert Hudgins*, for appellee.