Cite as 2021 Ark. App. 396

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-20-689

| | | |
|---|---|---|
| DAVID HARDISTY | | **Opinion Delivered** October 20, 2021 |
| | APPELLANT | APPEAL FROM THE BAXTER COUNTY CIRCUIT COURT [NO. 03DR-19-69] |
| V. | | |
| MARY HARDISTY | | HONORABLE ANDREW S. BAILEY, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Appellant David Hardisty and appellee Mary Hardisty were divorced by an August 2020 decree. David and Mary have two daughters and one son, all of whom were under the age of eight when their parents divorced. Mary was granted custody, and David was granted standard visitation periods but was not permitted to have the children stay overnight. David appealed, asserting that the circuit court erred by not granting joint custody and further erred by not allowing overnight visitation. We affirm.

David separated from Mary in December 2018. David moved in with his girlfriend, Krystle, and her four children (three sons and a daughter). In February 2019, Mary filed a complaint for divorce and sought custody of their children. David counterclaimed for divorce and sought custody of the children.

In May 2019, the parties agreed to a temporary order concerning their children: Mary would have custody; David would have specified daytime-hour visitation with the

children three days a week; David was not allowed overnight visitation because he did not have his own residence; and neither parent would expose the children to any romantic partner or have overnight guests to whom they were not married or related. In August 2019, the parties agreed to a settlement to resolve most of the issues related to property division, debts, and visitation. They agreed that David could have overnight visitation if he got married or obtained a separate residence that was adequate to house their three children; overnight visitation was contingent on their children having a separate bedroom, appropriate beds, and no other children sleeping in that bedroom.

The divorce hearing was conducted on August 5, 2020. Child custody and visitation were the primary issues to be litigated. Mary wanted custody and for David to have visitation but for the children not to stay overnight with him. David wanted joint custody or, in the alternative, unrestricted visitation.

Mary testified that she and David lived about a forty-minute drive apart because David moved in with his girlfriend in Mountain Home. Their children were ages seven, four, and two. Mary said she was the children's primary caregiver, and David exercised his visitation inconsistently. According to Mary, David's demeanor changed toward the end of their marriage, he was inexplicably gone for many hours, and he ultimately decided he had to leave. When she realized David was living with Krystle and her children, she became worried that Krystle's sons would take out their aggression on her much-younger children. She was also worried that David would not, or could not, consistently take their children to school or take their oldest daughter to her speech-therapy sessions, particularly since he lived so far away. Mary regretted making the temporary visitation agreement (that provided

2

circumstances in which David could exercise overnight visitation) because she learned more and more about how severe Krystle's children's problems were and how that could impact her children's safety. Mary said her children generally seemed to enjoy going to see their father, although she would observe their behavior being "off" when they came back.

David testified that he wanted joint custody, that his older two children could sleep in Krystle's daughter's bedroom, and that the youngest could sleep in a crib in his and Krystle's bedroom. David and Krystle were currently living in a rent house, but he was looking for a bigger home. David said his children got along well with Krystle's children and that he would never allow his children to be put in a dangerous situation. David said he is close to his children, he cares for them, and they have fun and enjoy being together. David wanted a week-on-week-off schedule because it was best for the children to be raised equally by and taught life lessons by both parents. He admitted that he had been very depressed toward the end of the marriage but said he no longer felt that way. David committed to driving the children to school and any other place they needed to go; he said his work schedule is flexible enough to do this, but Krystle could help too. He thought it would be "possible" after the divorce for him and Mary to talk through things related to their children, and he was willing to put the children's best interest first.

Krystle testified that she has bipolar disorder, and she acknowledged having had eleven prior reports against her alleging physical abuse or neglect of her children. Krystle's children ranged in age from fifteen to nine. Her three sons have mental-health issues, receive SSI disability benefits, and are prescribed medication for their issues. At times, their out-of-control behavior has required inpatient treatment. Fifteen-year-old K has bipolar disorder

and autism; he had tried to commit suicide and had been hospitalized as recently as November 2018. Twelve-year old V and ten-year-old T also have bipolar disorder. Krystle said V had run away from home, the options for him at that time were jail or residential care, and he had not yet been released to go home. T had been unstable on his medications; he would become defiant, scream, and run around. T had also recently been hospitalized. Krystle's nine-year-old daughter B did not have any mental-health diagnosis. Krystle said that if she and her sons were on their medications, they were able to function well, but she acknowledged that her sons had experienced "episodes" in recent months.

According to Krystle, David and Mary did not agree on much of anything, but she just stayed out of it and would go to her bedroom when David's children were visiting. She and David planned to get married.

Kyla Martin testified that she had helped Krystle and her children move to Arkansas in 2018, and Krystle's children broke windows, put holes in walls, and destroyed furniture in the house. Kyla had witnessed Krystle's and her children's chaotic and violent behavior; she saw T and V punch Krystle, and Krystle would hit back. Several years prior, she had witnessed K throw tables across the room. Kyla had also witnessed David and Mary arguing and making a scene in a parking lot.

The circuit court took the custody and visitation issues under advisement for several days. In the divorce decree, Mary was awarded primary custody subject to David's visitation:

4. The Court has significant concerns about the children staying overnight in Mr. Hardisty's home based on the evidence presented. Therefore, Mr. Hardisty is awarded visitation with the minor children every other Saturday from 8:00 a.m. until 8:00 p.m. and on the following Sunday from 10:00 a.m. until 6:00 p.m. Weekend visitation will begin by taking place on Saturday, August 15, 2020 and Sunday, August 16, 2020.

4

5. Mr. Hardisty will also have visitation with the children every Thursday afternoon from the time they are released from school, or by 3:00 p.m. if they are not in school, until 6:00 p.m.

6. Mr. Hardisty must be present for all periods of his visitation time with the children; the children are not to be left alone with any other individual during his periods of visitation with the children. If Mr. Hardisty is unable to exercise his visitation, the children shall remain with or be returned to Ms. Hardisty.

7. [Specific lists of the major holidays, birthdays, etcetera to be alternated between the parents.]

8. [Specific definitions of the daytime hours encompassed in each alternating holiday, birthday, etcetera.]

9. The parties may agree among themselves to any additional visitation that will further accommodate the children's meaningful and safe contact with their father.

10. Each party will accommodate reasonable phone contact with the minor children to the other party when the minor children are in their care.

11. The parties are to meet at Animal Clinic of the Ozarks in Flippin, Arkansas for visitation exchanges.

David appealed, asserting that the circuit court erred (1) by not awarding the parents joint custody, and (2) by restricting his visitation to omit overnights. We affirm the circuit court's decree.

In domestic-relations cases, our review is de novo, but we will not reverse the circuit court's findings of fact unless they are clearly erroneous. *Dare v. Frost*, 2018 Ark. 83, 540 S.W.3d 281. Whether a circuit court's findings are clearly erroneous turns in large part on the credibility of the witnesses, and special deference is given to the circuit court's superior position to evaluate the witnesses, their testimony, and the child's best interest. *Janjam v. Rajeshwari*, 2020 Ark. App. 448, 611 S.W.3d 202. There are no cases in which the circuit

5

court's superior position, ability, and opportunity to observe the parties carry as great a weight as those involving minor children. *Id.* The primary consideration in child-custody cases is the welfare and best interest of the child, with all other considerations being secondary. *Id.* Although our legislature has established that joint custody is favored in Arkansas, joint custody is not mandatory. *Id.* The statutory preference for joint custody does not override the ultimate guiding principle that the best interest of the child is the polestar for a custody determination. *Id.* When in the child's best interest, custody should be awarded in such a way as to ensure the frequent and continuing contact of the child with both parents. *Cunningham v. Cunningham*, 2019 Ark. App. 416, 588 S.W.3d 38; *see also Pace v. Pace*, 2020 Ark. 108, 595 S.W.3d 347. The fact that one parent is the primary caretaker of the child during the marriage is not in and of itself determinative, although it is relevant and worthy of consideration. *Black v. Black*, 2015 Ark. App. 153, 456 S.W.3d 773. Each child-custody determination ultimately must rest on its own facts. *Chandler v. Chandler*, 2021 Ark. App. 42, 616 S.W.3d 279.

David argues that there was no evidence that Krystle or her children had ever been aggressive toward his and Mary's children; that Mary's stated concerns were disingenuous; and that not allowing him equal time or overnight visitation was "severe" and based on speculation. In sum, David asks this court to reweigh the conflicting evidence given at trial and find differently than the circuit court, but credibility determinations and the weight of the evidence are decisions left to the circuit court. *See Janjam*, *supra*. The circuit court took the custody and visitation issues under advisement for several days. Krystle's much-older children have a history of chaotic and destructive behavior and had recent episodes in Krystle

6

and David's house. Krystle has her own mental-health concerns and a history of reportedly abusive behavior. After our de novo review of the evidence in this case, we hold that the circuit court did not clearly err in not granting joint custody and instead deciding to grant custody to Mary. *See Janjam*, *supra*.

Nor can we say that the circuit court's decision on visitation was clearly erroneous or an abuse of discretion. The primary consideration regarding visitation is the best interest of the child, and fixing visitation rights is a matter that lies within the sound discretion of the circuit court. *Baber v. Baber*, 2011 Ark. 40, 378 S.W.3d 699. The circuit court had "significant concerns about the children staying overnight in Mr. Hardisty's home." Even so, the circuit court's decree provided David with frequent and ongoing contact with his children, in keeping with Arkansas law. *Cunningham*, *supra*. The circuit court did not err in finding that the children's best interest was served by granting David weekly, alternating-weekend, and major-holiday visitation but without overnight stays.

Affirmed.

HARRISON, C.J., and BARRETT, J., agree.

*Green & Gillespie*, by: *Chad M. Green*, for appellant.

*Sanders, Morgan & Clarke PLLC*, by: *Roger L. Morgan*, for appellee.