Cite as 2021 Ark. App. 503

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV–21–83

KELLIE ELLIOT

APPELLANT

V.

ELI HALE

APPELLEE

**Opinion Delivered** December 8, 2021

APPEAL FROM THE SHARP
COUNTY CIRCUIT COURT
[NO. 68DR-19-59 ]

HONORABLE, MICHELLE C. HUFF
JUDGE

AFFIRMED

## MIKE MURPHY, Judge

Appellant Kellie Elliot appeals from the Sharp County Circuit Court's order establishing paternity, custody, and child support for her minor child, H.R.E. (DOB: 03-19-2019). In its December 29, 2020 order, the court found appellee Eli Hale to be the father and awarded him custody of H.R.E. subject to Elliot's supervised visitation. The order also established that Elliot pay $292 a month in child support. On appeal, Elliot argues that the hearing should have been continued, the limited supervision schedule is unsupported by the facts, and the child-support calculation is not supported by sufficient evidence. We affirm.

I. *Background*

On April 17, 2019, Hale filed a petition to establish paternity of H.R.E. born out of wedlock to then seventeen-year-old Elliot. On July 26, the court entered a temporary order granting Hale visitation every other Saturday. On December 2, the Arkansas Department

of Human Services (DHS) removed H.R.E. from Elliot's custody and placed her with Hale's mother, Dawn Hale, as a provisional foster parent. That same day Hale moved for emergency custody in response to the DHS case. On July 9, 2020, Elliot's attorney withdrew. On December 8, the court conducted a final hearing.

Before the proceeding, Hale's counsel announced to the court that the DHS case had been closed and that DHS had found Hale to be a fit parent and placed H.R.E. in his custody subject to Elliot's supervised visitation. Elliot's counsel then moved for a continuance. He explained that he had been hired only the night before and was not prepared to proceed. The court denied the motion finding no good reason to grant the continuance and noting that Elliot's original attorney had withdrawn seven months earlier, Elliot had been contacting the court, she knew about the hearing set for that day, and it was her fault for waiting until the eleventh hour to hire a new attorney.

Hale testified first. He testified that the DHS case was closed, and he had been awarded custody subject to Elliot's supervised visitation. He said he tries to be accommodating to Elliot and give her visitation whenever she asks. He said he lives with his parents, so whoever is home can supervise Elliot's visits. Hale addressed some of the concerns he had before the DHS case began when he had only limited visitation. For example, he noticed bug bites and bruises that seemed to be getting more severe; and right before DHS became involved, H.R.E. had a bloodshot vessel in her eye. Hale testified that Elliot would say H.R.E. had either fallen in the pack and play, or she tripped and fell on something in the house. Hale then testified about the DHS investigation that revealed H.R.E. had been sexually abused by Joey Penix, Elliot's husband at the time, and that Penix

2

has been charged with rape of an eight-month-old child. He testified that he believed he is better suited to care for H.R.E. because he has a better paying job, has a support system, and can provide H.R.E. with health insurance and day care. Hale testified that he never paid child support to Elliot while H.R.E. was in her care because he thought she had a good support system.

Kim Lavespere, the DHS caseworker, testified that on December 2, 2019, she responded to a call from the crimes-against-children division at Arkansas Children's Hospital. She explained that a hold was placed on H.R.E. due to the fact that H.R.E. was brought to the hospital with a vaginal tear that was bleeding. She testified that the ultimate recommendation from DHS was to grant custody to Hale because DHS had specific concerns about Elliot—she had declined counseling and did not have stable housing. She testified that Penix eventually admitted the abuse.

Dawn Hale's testimony mirrored her son's that H.R.E. was always covered in bug bites and bruises while she was in Elliot's custody. Dawn was likewise told by Elliot that H.R.E. fell in the pack and play. Dawn testified that while she never offered Elliot financial help, she offered her a support system.

Elliot testified that she was currently nineteen years old. She testified that she was no longer married to Penix and that the marriage had been annulled, but she also testified that the marriage license was never filed. She testified that she has been in a relationship for the past two months and is now currently engaged to Jimmy James. Elliot said she has lived in five to six places since H.R.E.'s birth. Elliot was not certain that Hale is H.R.E.'s father and appeared to dispute the DNA results that had been filed. She testified that until two and a

half years ago, she had a problem with inflicting self-harm by cutting. Elliot explained that this problem began when she was eleven years old and that she did it while pregnant. She said she had been on medication but is not any longer. When asked about bruising around H.R.E.'s ribs, Elliot testified that other children were in her house that could have picked H.R.E. up roughly. She said that when the bruising occurred, they were living with a family member of Penix who has since been charged with inflicting pain on a child.

Elliot testified about an incident that occurred Halloween night. She explained that an officer pulled over the car she was in. H.R.E. was seven months old and was in a forward-facing car seat; the driver had an open container of alcohol, a loaded handgun, and brass knuckles; and he was a convicted felon. Elliot claimed that she did not know these things at the time. Elliot testified that she believes Penix was coerced into confessing to the rape of H.R.E. She testified that she does not mind Hale having custody but that she wants joint time with H.R.E. She testified that her hourly wage is eleven dollars an hour and that she is working at least forty hours a week.

The court entered its order, and this appeal followed.

## II. *Discussion*

### A. Continuance

Elliot first argues that the trial court erred in denying her request for a continuance. She argues that denying the request resulted in a denial of a fair opportunity to protect "an interest far more precious than any property right," which was a denial of justice. She asserts that there would have been no prejudice by continuing her case until the next available date because H.R.E. was in the care of the Hales.

4

A motion for continuance shall be granted only upon a showing of good cause. *Williams v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 194, at 6, 575 S.W.3d 415, 419. We will not reverse the denial of a motion for continuance absent an abuse of discretion amounting to a denial of justice. *Id.* A trial court abuses its discretion when it acts improvidently and without due consideration. *Id.* The appellant bears the burden of showing that the trial court's denial of a continuance was an abuse of discretion, and in order to show an abuse of discretion, the appellant must show that she was prejudiced by the denial. *Id.*

We hold that Elliot has failed to show an abuse of discretion. This case was initiated on April 17, 2019, and her attorney withdrew from the case seven months prior to the final hearing. As the court noted, Elliot knew about the hearing date because she had been contacting the court. She waited until the night before the hearing to hire counsel. When deciding whether to grant a continuance, the trial court should consider the diligence of the movant, and we have held that a lack of diligence alone is sufficient to deny a continuance. *Hill v. Ark. Dep't of Hum. Servs.*, 2013 Ark. App. 760. Considering the circumstances and evidence before the trial court, we can conclude it did not abuse its discretion in denying Elliot's motion for continuance.

We further conclude that Elliot has also failed in her burden of demonstrating prejudice. She cites *Williams*, 2019 Ark. App. 194, 575 S.W.3d 415, as a suggestion that a similar denial of justice had occurred in that case. However, in *Williams*, we affirmed the trial court's denial of a continuance where the motion for a continuance was not made until the beginning of the termination hearing, and the motion would not have been made but

5

for the appellant's decision to leave the courthouse despite her knowledge that the hearing would be held that day. Other than her reliance on *Williams*, which is inapplicable, Elliot offers no explanation of how her case may have proceeded differently had the continuance been granted. On this record, we hold that the trial court did not abuse its discretion in denying Elliot's motion to continue the case.

## B. Visitation

Next, Elliot challenges the court's visitation finding and characterizes it as a punishment for "two or three indiscretions" made before she was eighteen and not because she poses some sort of danger to H.R.E.

In domestic-relations cases, our review is de novo, but we will not reverse the trial court's findings of fact unless they are clearly erroneous. *Hardisty v. Hardisty*, 2021 Ark. App. 396. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made. *Brand v. Brand*, 2020 Ark. App. 505, 612 S.W.3d 765. Whether a trial court's findings are clearly erroneous turns in large part on the credibility of the witnesses, and special deference is given to the trial court's superior position to evaluate the witnesses, their testimony, and the child's best interest. *Id*. There are no cases in which the circuit court's superior position, ability, and opportunity to observe the parties carry as great a weight as those involving minor children. *Id*. The primary consideration regarding visitation is the best interest of the child, and fixing visitation rights is a matter that lies within the sound discretion of the circuit court. *Hardisty*, 2021 Ark. App. at 7.

Upon review of the trial court's findings, we are not persuaded by Elliot's assertion that the court modified visitation for the sole purpose of "punishing" her. Elliot has not established that she has H.R.E.'s best interest in mind. She still denies that Penix sexually abused H.R.E. despite his admission, and she has a pending criminal charge for child endangerment. The testimony established that she surrounds herself with people who also have criminal histories. She also refuses counseling despite her history of self-harm and DHS's strong recommendation.

Elliot asks us to reweigh the conflicting evidence given at trial and find differently than the trial court, but credibility determinations and the weight of the evidence are decisions left to the trial court. *Brand*, *supra*. The trial court determined that Elliot had credibility issues, and to adequately protect the child, supervised visits were necessary until she shows maturity and good judgment. Given these circumstances, we cannot say that the circuit court erred.

## C. Child Support

Last, Elliot contends the trial court erred in its child-support calculation. She contends that the court had no evidence to determine Hale's income and failed to consider "the perks he receives by virtue of living at home rent free."

At the end of the hearing, concerning child support the court stated,

Support will be according to the chart, and we've heard testimony about her income. I didn't get any Affidavits of Financial Means, so as y'all know with the new Admin 10, you've got to have the gross earnings of both parties in there. So and that chart's going to need to be attached. If there's any dispute about that, if we need to have a Zoom hearing to get that amount in place or come back later, I'll be happy to do that.

7

Neither party requested a hearing, and the final order was entered December 29 with the child-support worksheet. Elliot did not raise any issue regarding child support until now. To preserve an issue for appeal, a party must object at the first opportunity and obtain a ruling from the trial court. *Vaughn v. State*, 338 Ark. 220, 223, 992 S.W.2d 785, 787 (1999). We will not review a matter on which the trial court has not ruled, and the burden of obtaining a ruling is on the movant; matters left unresolved are waived and may not be raised on appeal. *Id*. This issue is unpreserved.

Affirmed.

GRUBER and BARRETT, JJ., agree.

*Chet Dunlap*, for appellant.

*Johnathon D. Burgess*, for appellee.