Cite as 2026 Ark. App. 297

# ARKANSAS COURT OF APPEALS
## DIVISION I
No. CV-25-446

| | | |
|---|---|---|
| DALE MCMAHON | | Opinion Delivered May 13, 2026 |
| | APPELLANT | |
| | | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63DR-22-398] |
| V. | | |
| KALI CRAFT | | HONORABLE BRENT DILLON HOUSTON, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

**ROBERT J. GLADWIN, Judge**

Appellant Dale McMahon appeals the Saline County Circuit Court's order denying his petition to modify custody and request to award him equal parenting time with the appellee Kali Craft. Dale argues on appeal that the circuit court erred by denying his request for equal parenting time based on a material-change-in-circumstances analysis. Dale also contends that the circuit court's allocation of parenting time is clearly erroneous. We affirm.

## I. *Background Facts*

Dale and Kali were divorced on September 10, 2018, in the Craighead County Circuit Court. The parties' divorce decree and property settlement agreement (PSA) were executed on August 6, 2018. At the time of the divorce, Kali lived in Jonesboro, Arkansas, and Dale was residing in Canada under a one-year work permit. There were two children born of the marriage. In the PSA, the parties agreed to share joint legal custody of the

children and to make major decisions for the children "jointly." The parties further agreed that Kali would have primary physical custody of the children while Dale resided in Canada. The agreement stated that the parties "anticipated that Dale will either be living in Canada or the United Kingdom" and that if Dale moved to a location closer to the children, he could "file a petition to modify the visitation schedule to seek more visitation time with the children."

From the time the divorce decree and PSA were entered until September 2024, the court entered two subsequent orders regarding child support, but no custody or visitation issues were addressed. In January 2021, Dale's obligation to pay child support increased from $300.00 a month to $1,202.00 a month, and a child-support arrearage of $3,567.38 was established by the court. At the time of the 2021 child-support hearing, Dale was earning variable income as a truck driver in the United Kingdom. On March 3, 2022, Dale requested that his child-support obligation be reduced due to a material change in circumstance because his income had been reduced by 20 percent or more. The matter was transferred to the Saline County Circuit Court, and the court entered an order on April 4, 2023, finding that Dale had not proved a material change in circumstances.

On September 23, 2024, Dale filed a petition to modify custody based on his relocation to Arkansas. In his petition, Dale alleged that since the entry of the PSA, there had been a material change in circumstances to warrant modification of the current custody arrangement. Dale further asserted that it was in the best interest of the children to award

2

the parties joint physical custody. On November 22, 2024, the circuit court denied Dale's motion for appointment of an attorney ad litem.

A final hearing was held before the circuit court on December 3, 2024. At the hearing, the circuit court stated that based on its reading of the motion, "we're here for a visitation schedule." However, during Kali's testimony, the court paused to clarify—after rereading Dale's "petition to modify custody"—that Dale was indeed alleging it was in the best interest of the children to award joint physical custody due to a material change in circumstances. Dale's counsel responded, "Yes, Judge."

Kali testified that Dale notified her in fall 2023 that he was moving to Arkansas, and they agreed that Dale would have the children on alternating weekends until he was able to provide Kali with a schedule or some type of reassurance that he would be available when the children were in his care. Kali raised some concerns with lack of communication from Dale, specifically with regard to who was caring for the children while Dale claimed to be working seventy hours a week. Kali also testified that she noticed changes in the children's personalities when she and Dale alternated weekends in the summer. She stated that after returning from Dale's house, one of her children often showed a disregard for authority and was more secretive.

Dale testified that he moved from Canada back to Great Britain in 2019, and then moved from Great Britain to California in late 2022. In November 2023, Dale moved into his wife's home in Little Rock to begin working while he looked for a house closer to his children. He testified that when he moved to Arkansas, he was originally employed with

3

Western Express and would be gone for two weeks and home every other weekend. In May 2024, Dale began working with Performance Food Group (PFG) driving locally during the week. In early 2024, Dale moved to a residence in Benton. Thereafter, Dale's visitation consisted of every other weekend from after school on Friday until 5:00 p.m. on Monday during the school year and alternating weeks during the summer.

Dale testified that his new employment at PFG is almost exclusively limited to Central Arkansas and does not require overnight travel or working on the weekends. Dale testified that he would like to move into a managerial position—preferably at PFG—to avoid the physical demands of his current position. Dale's wife, Morgan McMahon, was questioned regarding Dale's plans to remain at PFG. She testified that Dale had talked about wanting to make more money, and "if a job came up then I don't see why he wouldn't." She referenced that she and Dale had discussed jobs that "come up on emails and things like that."

After Dale rested his case, Kali moved for a directed verdict, arguing that there had been no material change of circumstances pled or proved for a change of custody. In response, Dale's counsel argued:

> [T]he material change would be, at the time the last order was entered, [Dale] was not a resident of this state and so therefore, the Court specifically put in [the custody agreement] that, if he was to move back closer, that he would be able to petition for more time. I do not believe that there's a cap or a bar that states that he could never get 50/50 custody, which is what he's alleging. He did not live in the state at the time that this Court or the previous Court entered the order. So therefore, 50/50 custody was not even feasible due to the difference in location of the parties. So he has moved back, and since moving back he is alleging that that material change in itself is enough

4

for the Court to re-look at custody and modify custody on a material change on a joint custody basis, seeing that that is what the standard is.

In response, Kali's counsel argued that Dale could not create his own material change and that relocation in and of itself does not constitute a material change in circumstances. The circuit court granted Kali's directed-verdict motion, finding that there had been no material change in circumstances and, furthermore, that a change in custody was not in the children's best interest.

Additionally, the circuit court considered whether Dale should have a new visitation schedule—pursuant to the PSA—due to his relocation closer to the children. The circuit court held that it was not in the children's best interest for Dale to have equal parenting time; however, the court adopted the visitation schedule that the parties had been exercising since Dale's relocation to Arkansas. Accordingly, Dale was awarded alternating weekend visitation from Friday after school until Monday at 5:00 p.m., and the court expanded the parties' holiday visitation schedule and modified summer visitation to reflect an alternating-week schedule.

The court entered its final order on February 21, 2025. Dale filed a timely motion for reconsideration and/or a new trial; however, the court did not rule on the motion. Thereafter, Dale filed a timely notice of appeal; this appeal followed.

## II. *Standard of Review*

In reviewing domestic-relations cases, appellate courts consider the evidence de novo. *Baber v. Baber*, 2011 Ark. 40, 378 S.W.3d 699. This court will not reverse the circuit court's

findings unless they are clearly erroneous. *Id.* A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Stehle v. Zimmerebner*, 375 Ark. 446, 291 S.W.3d 573 (2009). When the question of whether the circuit court's findings are clearly erroneous turns largely on the credibility of the witnesses, we give special deference to the superior position of the circuit court to evaluate the witnesses and their testimony. *Baber*, *supra*.

### III. *Points on Appeal*

Dale argues on appeal that (1) the circuit court erred by denying his request for equal parenting time based on a material-change-in-circumstances analysis and (2) the circuit court's allocation of parenting time was clearly erroneous.

### IV. *Discussion*

#### A. Material Change in Circumstances

First, Dale contends that the circuit court erred in granting Kali's directed-verdict motion that was based on his alleged failure to prove a material change in circumstances. Specifically, Dale argues that he was not required to prove a material change in circumstances because his request was for an adjustment of parenting time—not an actual change in custody. Kali maintains that Dale cannot make this argument for the first time on appeal; therefore, his appeal should be dismissed.

We acknowledge the distinction between a change-of-custody request and a request for equal parenting time in the context of joint custody and relocation—specifically, that the former requires proof of a material change in circumstances, and the latter does not—as our

supreme court held in *Nalley v. Adams*, 2021 Ark. 191, 632 S.W.3d 297.  However, contrary

to Dale's argument on appeal, the circuit court did not refuse to address his request for equal

parenting time. The circuit court did find that there had been no material change in

circumstances to warrant modification of custody—presumably due to the fact that Dale

focused his arguments below entirely on proving that a material change had occurred.

Nonetheless, the circuit court's denial of equal parenting time was not based on an improper

material-change-in-circumstances analysis, as Dale contends. Rather, the circuit court held

that it was not in the best interest of the minor children for Dale to have equal parenting

time.  Specifically, the court held as follows:

> The Court finds it is not in the best interests of the minor children for [Dale] to have
> equal time with the children. Since the entry of the Decree in 2018, [Dale] has lived
> in Canada, then moved to England, then moved to California and now lives in
> Arkansas. Since he has lived in Arkansas for the past year, he has lived in two different
> counties, Pulaski County and Saline County. He has had two different jobs while in
> Arkansas and testified he is looking a third new job. There was a discrepancy in the
> testimony between [Dale] and his wife. He testified he was looking for a promotion
> within his current company. Her testimony was that he may be looking for outside
> opportunities. The Court finds [Dale]'s situation is unstable and has zero confidence
> that will change. The Court finds that [Kali] provides stability for the children and is
> the only stability they have known. [Dale] testified that [Kali] was a good parent, he
> had no complaints about her parenting and did not disagree with any decisions she
> had made on behalf of the children.

Whether a circuit court's findings are clearly erroneous turns in large part on the

credibility of the witnesses, and special deference is given to the circuit court's superior

position to evaluate the witnesses, their testimony, and the child's best interest. *Cunningham*

*v. Cunningham*, 2019 Ark. App. 416, 588 S.W.3d 38. There are no cases in which the circuit

court's superior position, ability, and opportunity to observe the parties carry as great a

weight as those involving minor children. *Id.* Under Arkansas law, the best interest of the child is the primary consideration in all matters concerning child welfare, with all other considerations being secondary. *See, e.g., id.*; *Bell v. Bell*, 2022 Ark. App. 279, 646 S.W.3d 678; *Everly v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 528, 589 S.W.3d 425.

Because the circuit court's determination that equal parenting time was not in the children's best interest is supported by the record, we are not left with the definite and firm conviction that a mistake has been made. Thus, we affirm the circuit court's order.

B. Allocation of Parenting Time

Next, Dale argues that the circuit court's allocation of parenting time was clearly erroneous. Specifically, Dale contends that the evidence does not establish instability on his part and that none of the circumstances the circuit court considered "unstable" have a negative impact on the children. Rather, Dale asserts that the issues the circuit court viewed as instability were in fact "commendable efforts to improve his situation and increase his presence in his children's lives."

We conclude that Dale's argument is nothing more than a request that we reweigh the evidence and evaluate it differently than did the circuit court. This is something we will not do. *See, e.g., Faulkner v. McCain*, 2020 Ark. App. 541, 613 S.W.3d 746. Given our standard of review and the special deference we give circuit courts in evaluating the children's best interest, we cannot say that the circuit court clearly erred.

Affirmed.

KLAPPENBACH, C.J., and HIXSON, J., agree.

*Kemps & Griffis PLLC*, by: *Adrienne M. Griffis*, for appellant.

*LaCerra, Dickson, Hoover & Rogers, PLLC*, by: *Lauren White Hoover*, for appellee.