
# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-16-986

| | | |
|---|---|---|
| NICHOLAS ACRE | | **Opinion Delivered:** April 26, 2017 |
| | APPELLANT | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23DR08-188] |
| V. | | |
| ASHLEY ACRE TULLIS | | HONORABLE H.G. FOSTER, JUDGE |
| | APPELLEE | AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Appellant Nicholas Acre appeals from an order entered by the Faulkner County Circuit Court on May 6, 2016, that allowed appellee Ashley Acre Tullis to relocate with their minor child, G.A., to Mississippi. Acre argues several points on appeal, but we find no error and affirm the circuit court.

The parties were divorced by decree on April 3, 2008, in the Faulkner County Circuit Court. One child, G.A., was born of their marriage. In 2010 each party filed a motion to change custody, and an agreed order was entered in October 2010 after the circuit court ordered mediation. The agreed order provided that once G.A. entered kindergarten in the fall of 2011, Tullis would be the primary residential custodian during the school year and Acre would be the primary residential custodian during the summer. The agreed order also included a section pertaining to the school or school district the minor child would

attend and provided terms to change custody should the minor child no longer attend school in the city or the school district as indicated in the order.

On May 21, 2014, Acre filed a motion for change of custody after learning that Tullis intended to move to the state of Mississippi; Tullis filed a petition to relocate on June 24, 2014. Acre also filed a motion for contempt alleging that Tullis owed child support from the date G.A. had started kindergarten to the present.

The circuit court entered a temporary order on October 17, 2014, enforcing the parties' agreement set forth in the agreed order entered on October 27, 2010, and denying the parties' respective petitions for relief. On May 6, 2016, the circuit court entered a final order allowing Tullis to relocate to Mississippi while not altering the custodial arrangement of the parties' agreement as to the time of year each one would be the primary residential custodian. The circuit court also denied Acre's motion for contempt, finding no amount of child support was owed. Acre filed a motion for reconsideration on February 12, 2016, before the final order was entered; Tullis filed a response to the motion for reconsideration on June 1, 2016. The circuit court never ruled on the motion so it was deemed denied. This timely appeal is now properly before our court.

On appeal, Acre argues four points: (1) the circuit court failed to uphold the terms of the agreed order entered into by the parties that contemplated a change of custody in the event the minor child did not attend certain school districts; (2) the circuit court incorrectly applied *Stills v. Stills*, 2010 Ark. 132, 361 S.W.3d 823, using the *Hollandsworth*[1] presumption

---

[1]*Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003). The *Hollandsworth* court announced a presumption in favor of relocation for parents with primary custody and held that the noncustodial parent has the burden to rebut the relocation

in favor of Tullis and should have made a change-of-custody determination pursuant to *Lewellyn v. Lewellyn*, 351 Ark. 346, 93 S.W.3d 681 (2002), and *Singletary v. Singletary*, 2013 Ark. 506, 431 S.W.3d 234, since the parties exercised joint custody; (3) if the parties did not exercise joint custody, Tullis waived any presumption based upon her actions and the language of the agreed order, and that it was not in the child's best interest to permit the relocation; and (4) the circuit court improperly denied Acre's motion for contempt based on Tullis's failure to pay child support. For the following reasons, we affirm.

In reviewing child-custody cases, our court considers the evidence de novo but will not reverse a circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Riddick v. Harris*, 2016 Ark. App. 426, at 4, 501 S.W.3d 859, 864. Deference to the circuit court is even greater in cases involving child custody, as a heavier burden is placed on the circuit court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Alphin v. Alphin*, 364 Ark. 332, 336, 219 S.W.3d 160, 162 (2005). If the circuit court fails to make findings of fact about a change in circumstances, this court, under its de novo review, may nonetheless conclude that there was sufficient evidence from which the circuit

---

presumption. The polestar in making a relocation determination is the best interest of the child, and the court should take into consideration the following matters: (1) the reason for the relocation; (2) the educational, health, and leisure opportunities available in the location in which the custodial parent and children will relocate; (3) the visitation and communication schedule for the noncustodial parent; (4) the effect of the move on extended family relationships in the current location and the new location; and (5) the preference of the child, including the age, maturity, and the reasons given by the child as to his or her preference.

court could have found a change in circumstances. *Williams v. Geren*, 2015 Ark. App. 197, at 10, 458 S.W.3d 759, 766. Due deference is given "to the superior position of the trial court to view and judge the credibility of the witnesses." *Alphin*, 364 Ark. at 336, 219 S.W.3d at 162. Our court has stated time and time again that "we know of no cases in which the superior position, ability and opportunity of the trial court to observe the parties carry as great a weight as those involving children." *Carver v. May*, 81 Ark. App. 292, 296, 101 S.W.3d 256, 259 (2003).

In Acre's first point on appeal, he claims that the circuit court failed to uphold the terms of the agreed order entered into by the parties that contemplated a change in custody in the event the minor child did not attend certain school districts, but he does not argue that such failure was in error. Under Arkansas law, parties have long been able to make their own contract and fix its terms and conditions, and the contract "will be upheld unless illegal or in violation of public policy." *Rownak v. Rownak*, 103 Ark. App. 258, 262, 288 S.W.3d 672, 675 (2008). After a hearing and briefing by the parties, the circuit court chose not to uphold the terms of the agreed order entered into by the parties because the court found that such an agreement was unenforceable. This is within the circuit court's authority. In its order, the circuit court stated that *Stills v. Stills*, 2010 Ark. 132, 361 S.W.3d 823, "holds that the parties cannot enter into a contract with regard to custody that seeks to avoid the provisions of the '*Hollandsworth* case' which created the presumption in favor of relocation by a custodial parent" and that the *Stills* case and its analysis applied to the instant case. We agree.

Acre argues that the *Hollandsworth* presumption does not apply because the parties exercised joint custody; however, testimony presented showed that Tullis was the primary custodian for 41 to 42 weeks per year. This is not joint custody. The circuit court clearly has authority under Arkansas law to review an agreement to ensure that the agreement does not violate Arkansas law or public policy. Therefore, we affirm on Acre's first point on appeal.

The second point on appeal—that the circuit court incorrectly applied *Stills* by using the *Hollandsworth* presumption in favor of Tullis and should have made a change-of-custody determination pursuant to *Lewellyn* and *Singletary* because the parties exercised joint custody—is also unpersuasive. In *Singletary*, our supreme court held that the *Hollandsworth* presumption is inapplicable when the parents share joint custody, and in joint-custody relocation cases, the focus is whether there has been a material change in circumstances and the best interest of the child. When a contract is ambiguous on its face, we resolve the ambiguity by looking at other parts of the contract and the parties' testimony about what they intended, as well as their conduct. *Rockefeller v. Rockefeller*, 355 Ark. 145, 980 S.W.2d 255 (1998).

Here the parties initially agreed to joint custody until their son began kindergarten; however, the agreed order, which was entered on October 27, 2010, and is now the subject of the case before us, outlines what would occur when G.A. entered kindergarten in the fall of 2011. It reads:

> When [G.A.] enters kindergarten for fall semester 2011, Parents agree Mother will be [G.A.]'s primary residential custodian during the school year, and Father will be [G.A.]'s primary residential custodian during the summer. In addition, during the

school year Father will share time with [G.A.] every other weekend, and during one overnight visit through the week by mutual agreement of Parents as outlined below.

Based on the agreement, it is clear to us that the parties agreed that once G.A. started school, the parties would no longer have joint custody. While Acre is the primary custodian for the summer, Tullis is the primary custodian for the school year, which amounts to significantly more time as primary custodian. Therefore, we hold that *Lewellyn* and *Singletary* are not applicable in the instant case. The circuit court was correct in its finding that *Stills* applies and that the *Hollandsworth* presumption is applicable and cannot be waived.

Acre next argues that if the parties did not exercise joint custody, Tullis waived any presumption based on her actions and the language of the agreed order, and it was not in the best interest of the child to permit the relocation. Under *Stills*, the *Hollandsworth* presumption "is not a 'right' that may be claimed by one party or another, nor can it be altered or waived by a party." *Stills*, 2010 Ark. 132, at 9, 361 S.W.3d at 829. As such, parents cannot agree to waive the *Hollandsworth* presumption. Moreover, part of Acre's argument here is not preserved for our review. Acre failed to obtain a specific ruling from the circuit court on his assertion that Tullis waived any presumption based on her actions. Accordingly, we will not address this portion of his appeal.

Acre's fourth and final point is that the circuit court improperly denied his motion for contempt based on Tullis's failure to pay child support. The circuit court found that

> an interpretation that finds Mother should still be paying child support would be contrary to the context of the agreement, which seems to tie custody and some financial issues to the start of kindergarten, also contrary to the fact that Mother would begin to have considerably more custodial time than Father, and contrary to the actions of the parties, i.e. Mother stopped paying child support and Father made no attempt to enforce any obligation for child support that he now claims to have existed past the start of kindergarten and to date, until now.

We agree with the circuit court's finding that Acre's apparent interpretation and argument are contrary to the context of the agreement into which he and Tullis had entered. Tullis paid child support for G.A. until she became the primary custodian for three-quarters of the year at the time G.A. began kindergarten.

Because the circuit court was in the best position to view the totality of the evidence, to observe the demeanor of the witnesses, and to determine the best interest of the child, we affirm.

Affirmed.

HIXSON, J., agrees.

MURPHY, J., concurs.

**MIKE MURPHY, Judge, concurring.**    I agree with my colleagues that this case should be affirmed on all points. I write separately because I would have reached the conclusion that the circuit court properly held that the relocation provision was unenforceable because self-executing provisions in custody agreements are contrary to Arkansas custody law, generally.

In *Stills v. Stills*, the parents had a custody agreement wherein the custodial parent waived the *Hollandsworth* presumption in the event she sought to relocate with the children. 2010 Ark. 132, 361 S.W.3d 823. Our supreme court held the provision was unenforceable by concluding the *Hollandsworth* presumption was, at its core, a legal burden of proof to be enforced by the circuit courts in deciding relocation disputes and not a "right" that may be claimed by one party or another. *Hollandsworth v. Knyzewski*, 353 Ark. 470, 477, 109 S.W.3d 653, 658 (2003).

SLIP OPINION

In the case at bar, the father asked the lower court to uphold the following provision:

> Parents agree and understand that if [G.A.] is taken out of the Pulaski County School District, or does not attend school in the Maumelle area, Father will become the primary residential custodian, and [G.A.] will be placed in a school in the Quitman School District.

The lower court and the majority reason this provision is, essentially, like *Stills* in that it is an attempt to "work around" the *Hollandsworth* presumption. And while that is certainly one consequence of the provision, the provision at issue here goes *even further* than the one in *Stills* in that instead of attempting to waive a legal presumption, it simply *changes custody* upon the occurrence of an agreed-upon event. Our appellate courts have regularly and often said that the child's best interest is the paramount consideration in any situation in which the trial court is deciding who should exercise care, custody, and control over the minor child. *See, e.g.*, *Furr v. James*, 2013 Ark. App. 181, at 4, 427 S.W.3d 94, 96 (2013). Self-executing custodial provisions do not even allow a court to pay lip service to a best-interest analysis, and this is in complete derogation of our long-standing principles. *See also* Sarah Abramowicz, *Contractualizing Custody*, 83 Fordham L. Rev. 67, 87 (2014) ("Courts have largely refused to enforce agreements providing for an automatic change of custody upon an agreed-upon event, even where the agreement has been incorporated into a court order.").[1]

---

[1]The parties' agreement actually contained two self-executing provisions. The first was that the parents were to share week-to-week joint custody *until* G.A. reached kindergarten. That provision is not at issue before us, and at the time of the petition for relocation, G.A. had been living with his mother as the primary custodian for several years.

For these reasons, I would affirm the lower court's conclusion that the change-of–custody provision was unenforceable. I agree with the majority on all other points. For these reasons, I concur.

*Hope, Trice, O'Dwyer & Wilson, P.A.*, by: *Ronald A. Hope* and *Ralph "Win" Wilson III*, for appellant.

*Choate Law Firm, PLLC*, by: *Penny Collins Choate* and *Tasha Terry*, for appellee.