Cite as 2022 Ark. App. 279

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-21-499

| | |
|---|---|
| LYNDSAY BELL <br><br> APPELLANT <br><br> V. <br><br> ZACHARY BELL <br><br> APPELLEE | Opinion Delivered June 1, 2022 <br><br> APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTEENTH DIVISION <br><br> [NO. 60DR-16-2184] <br><br> HONORABLE AMY DUNN JOHNSON, JUDGE <br><br> AFFIRMED IN PART; REVERSED IN PART |

## ROBERT J. GLADWIN, Judge

Lyndsay Bell brings this one brief appeal of the June 24, 2021 order of the Pulaski County Circuit Court, which modified the September 19, 2017 divorce decree (Decree) between Zachary Bell and her. Lyndsay argues that the following actions by the trial court were clearly erroneous: (1) finding that a material change of circumstances warranted a modification of custody; (2) finding that a modification of physical and legal custody was in the children's best interest; (3) modifying the supervision requirement for Zach's spouse; (4) adding a "springing" joint physical-custody provision that would automatically convert Lyndsay's primary physical custody of the parties' children to joint physical custody if Zach

moves within twenty miles of the children's school; and (5) modifying the division of certain child-related expenses. We affirm in part and reverse in part.

I. *Facts and Procedural History*

Lyndsay and Zach were divorced pursuant to an agreed Decree and a written property settlement agreement (PSA) that was incorporated but not merged into the Decree on September 19, 2017. Lyndsay and Zach share two minor children, LB and AB. Pursuant to the Decree, Lyndsay was given primary physical and legal custody of the children subject to Zach's visitation, including every other weekend visitation, a holiday schedule that varied depending on the distance the parties lived from each other, and summer visitation that gradually increased each year. The Decree also contained a provision that Zach's then girlfriend (later wife), Kemberly, would not be around the children unsupervised.

Other than child-support matters, the case remained closed until July 17, 2020, when Zach filed a motion for contempt claiming that Lyndsay had failed to adhere to the Decree's summer-visitation schedule. On August 4, Lyndsay filed a countermotion for contempt and motion to enforce settlement agreement for numerous alleged violations of the Decree. On August 26, Zach filed a continued motion for contempt and modification of divorce decree. On December 30, Lyndsay filed a second motion for contempt, for order returning custody, and for order to appear and show cause due to Zach's refusal to return the children after Christmas visitation. On March 14, 2021, Zach filed an amended motion for change of custody and renewed motion for contempt and order to show cause. On April 5, the trial

2

court entered an order appointing an attorney ad litem to represent the interests of the children.

A final hearing on all motions occurred on May 26 and 27, after which the trial court made an oral ruling that was reduced to a final order on June 24. The trial court found that there had been material changes in circumstance and that it was in the best interest of the children that custody and visitation be modified.

The trial court modified legal custody from Lyndsay having sole legal custody to granting joint legal custody between the parties. The trial court further ordered that Lyndsay would continue to have primary physical custody as long as Zach lived outside of the Little Rock area (he lived in Hot Springs at the time of the hearing). But in the event Zach moves within twenty miles in any direction of the children's school, then physical custody would automatically convert to 50/50 joint custody with the parties exchanging the children every other week. The trial court increased Zach's visitation, specified holiday and summer visitation protocol, and implemented other provisions, including a modification of the supervision requirement for Zach's spouse, Kemberly, and the parties' division of certain child-related expenses. The trial court did not find Lyndsay in contempt, but it did find Zach in contempt for failing to pay certain required expenses. Lyndsay filed a timely notice of appeal on July 23, and this appeal followed.

II. *Standard of Review and Applicable Law*

This court reviews domestic-relations cases de novo, but we will not reverse the trial court's findings unless they are clearly erroneous. *Doss v. Doss*, 2018 Ark. App. 487, 561

S.W.3d 348. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id*. Due deference is given to the trial court's superior position to determine the credibility of witnesses and the weight to be given their testimony. *Id*.

Whether a trial court's findings are clearly erroneous turns in large part on the credibility of the witnesses, and special deference is given to the trial court's superior position to evaluate the witnesses, their testimony, and the child's best interest. *Cunningham v. Cunningham*, 2019 Ark. App. 416, 588 S.W.3d 38. There are no cases in which the trial court's superior position, ability, and opportunity to observe the parties carry as great a weight as those involving minor children. *Id*. The primary consideration in child-custody cases is the welfare and best interest of the child, with all other considerations being secondary. *Id*.

The party seeking modification of the custody order has the burden of showing a material change in circumstances. *Jeffers v. Wibbing*, 2021 Ark. App. 239, at 7. Courts impose more stringent standards for modifications in custody than they do for initial determinations of custody to promote stability and continuity in the life of the child and to discourage repeated litigation of the same issues. *Id*. In order to change custody, the trial court must first determine that a material change of circumstances has occurred since the last order of custody, and if that threshold requirement is met, it must then determine who should have custody with the sole consideration being the best interest of the child. *Acklin v. Acklin*, 2017 Ark. App. 322, at 2, 521 S.W.3d 538, 539. In custody appeals, this court considers the

4

evidence de novo and does not reverse unless the trial court's findings of fact are clearly erroneous.

II. *Discussion*

A. Material Change of Circumstances

Because Zach filed a motion for modification of divorce decree wherein he requested that legal and physical custody be modified, he carried the burden of proof to prove there had been a material change of circumstances that occurred since the Decree was entered that warranted a modification of custody. As reaffirmed in *Wills v. Wills*, 2016 Ark. App. 174, at 3, with regard to visitation, which is equally applicable to custody;

> the party seeking a change in visitation schedule has the burden to demonstrate a material change in circumstances that warrants such a change. The primary consideration regarding visitation is best interest of the child. Important factors the court considers in determining reasonable visitation are the wishes of the child, the capacity of the party desiring visitation to supervise and care for the child, problems of transportation and prior conduct in abusing visitation, the work schedule or stability of the parties, and the relationship with siblings or other relatives.

The trial court found the following material changes of circumstances warranted a modification to visitation and custody, stating from the bench:

> I do find that there has been a material change of circumstances warranting a change, a modification to custody and visitation. And for any sort of order to be modified, even when you have got an ambiguous order you still have to find that there's a material change of circumstances in order to be able to modify that.

> I think the biggest material change that I am seeing is communication issues and parenting time issues that have been precipitated by ambiguities in the divorce decree that I think each party believes that the other is weaponized against the other. I know there is some lingering hurt and trust issues. Those have been there all along. I have not considered those for purposes of determining whether There has been a material change of circumstances, but I just wanted to acknowledge that.

Additionally, since the divorce, both parties have remarried and are in stable, long-term relationships where [LB] and [AB] have siblings on both sides that they love and that they like spending time with. I also, I know that around the time of the divorce there were some upheaval with Mr. Bell's employment and income and that situation has since stabilized.

I also believe based on the testimony that I have heard that Ms. Bell has whether intentionally or not has alienated Mr. Bell from the children part by micromanaging the parenting and by not giving Mr. Bell the space to be the pair that he wants to be. So that is what I have taken into consideration in determining that there has been a material change in circumstances.[1]

Lyndsay submits that any ambiguities in the agreed Decree do not constitute a material change of circumstances because they would have existed when the Decree was signed as well as after its entry. She argues that this alone is an insufficient basis for modifying custody. She notes that neither party filed a motion alleging ambiguities in the Decree; however, Zach testified that the summer-visitation provision was ambiguous, that some Decree provisions were vague, and that it would be beneficial if things were more definitive. Lyndsay acknowledges that she agreed that it would be best if some modifications were made to the visitation provisions—as recommended by the ad litem—including for there to be more specific dates and times for Zach's visitation.

Lyndsay maintains that although both the parties and trial court used the term ambiguous, from the record, they all agreed that the Decree just needed more specificity regarding visitation. She argues that the trial court should merely have modified certain

---

[1]The trial court's oral findings on this issue were included almost word-for-word in paragraph two of the final order.

visitation provisions to lessen recurring conflicts while retaining as much of the original Decree as possible. She contends that because there were no ambiguities regarding physical or legal custody, the trial court's modification of these provisions was not just an attempt to clarify and interpret the parties' intention in the original agreement but rather to change the basic terms.

Lyndsay notes that this court has stated that "the mutual ability of the parties to cooperate in reaching shared decisions in matters affecting the child's welfare is a crucial factor bearing on the propriety of an award of joint custody, and such an award is reversible error where cooperation between the parents is lacking." *Emis v. Emis*, 2020 Ark. App. 126, at 8–9, 597 S.W.3d 93, 98; *see also Hongyang Li v. Yi Ding*, 2017 Ark. App. 244, at 12, 519 S.W.3d 738, 744.

In *Hewett v. Hewett*, 2018 Ark. App. 235, 547 S.W.3d 138, this court reversed and held that the trial court's order failed to articulate the specific change in circumstances warranting modification in custody because the only circumstances referenced in the order were the parents' inability to communicate civilly and work together to make parenting decisions, which did not demonstrate a change since this had long been the case and was akin to the "scattering of petty complaints" rejected in *Byrd v. Vanderpool*, 104 Ark. App. 239, 244, 290 S.W.3d 610, 613 (2009). *Id.* at 5, 547 S.W.3d at 141. Lyndsay argues that similarly, Zach did not prove there had been material changes of circumstances warranting a modification of custody

Despite the trial court's acknowledging that were lingering hurt and trust issues and noting that each party believes that the other is weaponized against the other, it specifically stated that it had not considered those things for purposes of determining whether there had been a material change of circumstances, stating:

> Additionally, since the divorce, both parties have remarried and are in stable, long-term relationships where [LB] and [AB] have siblings on both sides that they love and that they like spending time with. I also, I know that around the time of the divorce there were some upheavals with Mr. Bell's employment and income and that situation has since stabilized.

> I also believe based on the testimony that I have heard that Ms. Bell has whether intentionally or not has alienated Mr. Bell from the children part by micromanaging the parenting and by not giving Mr. Bell the space to be the pair that he wants to be. So that is what I have taken into consideration in determining that there has been a material change in circumstances.

We disagree with Lyndsay's argument that no material changes in circumstances warranted a modification of the custody and visitation provisions of the Decree. She completely overlooks the evidence before the court indicating that her unilateral decisions were detrimentally impacting Zach's visitation and parenting time with the children. The trial court found that Lyndsay had alienated Zach from the children "in part by micromanaging the parenting," and there is ample evidence in the record to support that finding. Lyndsay attempted to dictate the amount of consecutive days Zach could exercise his visitation—stating that the children told her that they only wanted to be away from her for "three sleeps." She likewise tried to set which part of the holidays she would take, with Zach getting what was left over, without considering his teaching or coaching schedule.

Moreover, Lyndsay would only approve certain people to be able to drop off and pick up the children or to supervise Kemberly when she was around the children.

Lyndsay attempts to rely on the argument that because the parties cannot communicate effectively, joint custody is not feasible. But her position ignores the trial court's finding that she both initiated and exacerbated these problems by micromanaging the terms of Zach's visitation. Moreover, there is testimony from both parties as well as the ad litem that recently the parties have been able to effectively communicate about decisions related to the children. Accordingly, we hold that the trial court did not clearly err in finding that Zach met his burden to prove that there had been a material change of circumstances warranting a modification of the visitation and custody provisions.

B. Best-Interest Finding

Regarding the modification of child-custody orders, "[t]he primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary." *Hongyang Li*, 2017 Ark. App. 244, at 9, 519 S.W.3d at 743. Arkansas appellate courts have made clear that

> a judicial award of custody will not be modified unless it is shown that there are changed conditions that demonstrate that a modification of the decree will be in the best interest of the child, or when there is a showing of facts affecting the best interest of the child that were either not presented to the circuit court or were not known by the circuit court at the time the original custody order was entered.

*Erskin v. Stout*, 2015 Ark. App. 533, at 6, 472 S.W.3d 159, 163 (quoting *Harris v. Harris*, 2010 Ark. App. 160, at 13–14, 379 S.W.3d 8, 15–16). Here, the trial court specifically stated in the oral ruling at the end of the two-day hearing:

9

Additionally, I find that it is in the best interest of the children to modify custody and visitation. The reason I found this is that I think a modification would provide more stability and predictability for them. Particularly to the extent that we can shore up some of the ambiguities that are in the current decree. I think there will be more opportunity for the children to benefit in having Mr. Bell's input in their lives and having additional parenting time and I think, too, having more time with siblings and extended family on both sides, which the kids obviously enjoy, and I think benefit from. And so that is what I have taken into consideration for purposes of determining whether we have got a material change in circumstances and then what I think is in the best interest of the children.

I have also considered the bonds that both parents have with the children, and I think they need for the children to be able to establish a more significant bond with their father.[2]

Lyndsay submits that Zach failed to prove that a modification of physical or legal custody was in the best interest of children. She maintains that the undisputed evidence reflected that under the current custody arrangement, the children were excelling in school, at home, and in extracurricular activities. *See Pace v. Pace*, 2020 Ark. 108, at 10, 595 S.W.3d 347, 353 (holding that even in light of parental discord, custody should not be changed because the child was "happy, healthy, and intelligent").

As the primary evidence supporting her position, Lyndsay relies on the testimony of the children's principal, Amy Somers. Ms. Somers testified that both children were thriving, had lots of friends, and were highly involved in school and sports. The parties' son, LB, had the highest academic average in his class, displayed no behavioral issues, and received the good-character award. Similarly, the parties' daughter, AB, had great grades, was an honor-

---

[2]The trial court's oral findings regarding best interest of the children were restated in large part in paragraph 3 of the final order.

roll student, displayed no behavioral issues, and received the good-character award. According to Ms. Somers's , the children did not seem to have been adversely affected by the parties' custody dispute. Lyndsay notes that that LB's soccer coach testified similarly.

Ms. Somers described Lyndsay as a highly involved parent in the children's education but could not recall ever seeing Zach at the school and had not had much interaction with him except when he requested documentation on the children's absences and grades. Further, she explained that because it was Kemberly who requested certain documentation—who is not a parent with custody or educational rights and was subject to supervised visitation—the information could not be given to her. However, Ms. Somers also noted that she then called Zach directly to explain the school's protocol and drove the requested documentation to his house in Hot Springs.

Lyndsay also notes that Zach acknowledged that she had not made any decisions that he found to be contrary to the children's best interest regarding their health, education, or extracurricular activities. His only concern had been her not coordinating scheduling with him, which she notes the Decree did not require. Even assuming all of Zach's complaints are taken as true and undisputed, Lyndsay cites *Gray v. Gray*, 101 Ark. App. 6, 269 S.W.3d 834 (2007), as factually analogous. She urges that in spite of overwhelming evidence as to both children's excellent health, safety, education, and welfare in her care, the trial court drastically changed much about the children's lives without sufficient evidence that such a change to physical or legal custody would be in their best interest.

11

We disagree and note that the trial court relied on a showing of facts affecting the best interest of the children that were not known by it when the original custody provisions were entered as part of the Decree—including clarifying what the parties and trial court agreed were ambiguities in the original Decree; providing more opportunities for the children to benefit in having Zach's input in their lives through additional parenting time; having more time with subsequently born half siblings and extended family on both sides; and the need for the children to be able to establish a more significant bond with their father. Additionally, the record indicates that the trial court found Zach to be more credible than Lyndsay, which appears to have weighed heavily into the decision. As previously stated, this court gives special deference to the trial court's superior position to evaluate the witnesses, their testimony, and the child's best interest. *See Cunningham, supra.* Accordingly, we affirm the trial court's best-interest finding.

### C. Modification of Supervision Requirement for Kemberly

Paragraph 3(f) of the Decree states:

> That the parties agree the minor children will not be around Kemberly George unsupervised, even if the Defendant and Ms. George marry. The parties agree that the supervisors for Ms. George will include the Defendant, Gordon Bell, Rena McInturff and/or Sarah Esmail. Additional supervisors may be added by the parties' mutual agreement in writing with the written agreement forwarded to the Court. Each supervisor must understand and agree that the supervisor must be in the physical presence of the children at all times that Ms. George is present.

The supervision requirement for Kemberly was included in the Decree because of Lyndsay's concerns about Kemberly's mental health. Lyndsay submits that she continued to have concerns based on Facebook posts that Kemberly made about "being properly

12

medicated to balance manic episodes" and hitting commercial vehicles. Lyndsay submits that through written discovery requests, she attempted to learn more information about Kemberly, but she maintains that Zach refused to provide any information, claiming it was not relevant to the case. Similarly, Zach refused to answer questions about Kemberly's mental health in his deposition.

The record indicates that the ad litem investigated Kemberly's mental-health issues and obtained related medical records. The ad litem's report explained that Kemberly's mental health records predate the parties' divorce and continue after it. The report reflects that Kemberly previously had an inpatient stay with a medical provider but that she was not currently in treatment (and had not been since March 2020) or on medication. Ultimately, the attorney ad litem recommended some changes to the supervision requirement contained in the Decree, specifically to allow more supervisors and to allow short periods of unsupervised time with the children, and Lyndsay did not object to these recommended changes.

The trial court terminated the supervision requirement, specifically noting Zach's assurance in his testimony that he would not the leave children unattended if she began showing signs of mental-health issues. Paragraph 14 of the final order provides:

> With regard to the supervision requirement on Kemberly Bell, the Court heard no testimony in regard to Kemberly Bell that she has put the parties' children in any danger. The concerns about her mental health are ones that are recent and weren't the source of concerns that precipitated the supervision requirement in the original Decree. The Ad Litem has followed up with Kemberly Bell to confirm that she has sought out and is receiving the mental health treatment she needs. The supervision provision regarding Kemberly Bell in the original Decree is removed. Mr.

13

Bell is ordered to not leave the children unattended in Kemberly's care should she show signs of having any mental health issues, as the Court trusts that Mr. Bell will recognize that since that would be a concern for the other two kids they share.

Lyndsay argues that it was Zach burden to prove that there had been a change of circumstances—specifically that Kemberly's mental health was no longer of concern—to support the trial court's termination of the supervision requirement. She urges that Zach failed to present such proof, despite her acknowledging that much of his case focused on this issue. Regarding paragraph 14, Lyndsay requests that this court instruct the trial court to amend this provision to arrange for more supervisors and only limited periods of unsupervised time consistent with the ad litem's recommendations.

We hold that the record supports the trial court's decision on this issue. Despite Lyndsay's stated concerns regarding Kemberly's Facebook posts, she failed to call Kemberly as a witness to develop this issue before the trial court. Although Zach does seem to indicate in his testimony that Kemberly is bipolar, it is unclear whether that testimony was related to an actual medical diagnosis or simply his impression. What is clear from the record is that it is undisputed that Zach's father does have a bipolar diagnosis, and Lyndsay testified clearly that she does not have an issue with him supervising the children.

The trial court acknowledged that the issue of mental health is a serious topic and noted that the evidence supports that Kemberly had postpartum depression as well as depression issues after a motor-vehicle accident. The trial court found that there had been no evidence presented to show that Kemberly either had been or was at the time of the hearing a potential harm to any of the children. She was taking care of her own two children,

14

she was seeking help from medical professionals when the need arose, and undisputed testimony indicated that the children had a good relationship with her. Moreover, Zach testified that he would be willing to revisit the issue if concerns subsequently arose regarding the effects of Kemberly's mental health as related to the children. Lyndsay, in essence, argues that we should reweigh the evidence in a manner that is more favorable to her, but credibility determinations are left to the trial court, and this court will not reweigh the evidence. *E.g.*, *Schnick v. Russell*, 2022 Ark. App. 212, at 11, __ S.W.3d __, __.

### D. "Springing" Joint-Physical-Custody Provision

In paragraph 5 of the Final Order, the trial court ordered:

[Lyndsay] shall continue to have primary physical custody of the minor children for so long as [Zach] lives outside of the Little Rock area. In the event [Zach] moves within twenty (20) miles in any direction from the minor children's school. custody shall then convert to fifty-fifty (50/50) joint physical and legal custody with the parties exchanging the children week-on and week-off on Sundays at 6:00 p.m.

Lyndsay argues that there is no precedent for such a decision and that the trial court clearly erred by ordering physical custody to automatically convert to joint custody upon Zach's relocating closer to the children's school. We agree.

This court has held, in the context of child-custody modification, that an appellant cannot use the circumstances he or she created as grounds to modify custody. *Jeffers*, 2021 Ark. App. 239, at 9. "Our supreme court has been clear that relocation alone is not a change in circumstances warranting a change in custody nor are circumstances created by the party seeking the modification." *Id.* In *Jeffers*, Jerry filed a motion for modification based on numerous circumstances, including that he had relocated to live closer to the minor child

and his work schedule had changed, among other reasons. *Jeffers*, 2021 Ark. App. at 10. The court held that while Jerry's decision to move closer to the child was commendable, it was a change that was created by Jerry voluntarily. *Id.* Jerry's relocation, his developing relationship with the child, and the change in his work schedule were all circumstances attributable to Jerry and were determined to be insufficient, standing alone, to support a material change in circumstances. *Id.*

Lyndsay maintains that this "springing" joint-custody provision was clearly erroneous because it is evident from the provision and the trial court's ruling that it was Zach's residential relocation *alone* that warranted the modification of physical custody. Specifically, the trial court found that under the present circumstances, which included Zach's residing in Hot Springs, Lyndsay should continue to be the children's primary physical custodian. Therefore, because Zach alone had control over his residence, it was a change created by Zach voluntarily, and the "springing" joint-custody provision is contrary to Arkansas law.

The provision would modify the physical custody of the children without giving Lyndsay a chance to be heard on whether the change in custody would be in the best interest of the children. The trial court did not impose any limitations or other conditions on Zach's potentially moving within twenty miles of the children's school. For example, it neither imposed a condition that Zach's move had to occur within a certain amount of time nor took into consideration any other material change that might occur—such as Zach's moving to a residence that is unsafe or unsuitable, a change in his marital status that might limit his ability to care for the children, a decline in his or his wife's physical or mental health, a

16

variation of his work schedule or income, or any number of other material changes that might impact the physical-custody provision.

Arkansas uses a present-based analysis when analyzing custody issues, and trial courts must examine the changes and best interest of the children presented as evidence to the court at the time of the final hearing, not changes that may occur weeks, months, or years down the road. *See Acklin v. Acklin*, 2017 Ark. App. 322, at 2, 521 S.W.3d 538, 539 (holding that material changes had to have occurred since the last order of custody). Because the final order includes the springing provision that would automatically change primary physical custody upon the happening of a prospective event after the order of custody is entered, the provision is contrary to Arkansas law, similar to this court's reversal of an automatic escalation clause for alimony, which occurred in *Kelly v. Kelly*, 2016 Ark. App. 272, 496 SW.3d 391.

In *Acre v. Tullis*, 2017 Ark. App. 249, 520 S.W.3d 316, this court held that an agreement that a change of custody would occur if the child did not attend a school in a particular school district was not enforceable. In his concurrence, Judge Murphy pointed out that the child's best interest is paramount in the determination of who should exercise care, custody, and control over the child and is instructive with respect to the self-executing relocation provision:

> [T]he provision at issue here goes even further than the one in *Stills* [*v. Stills*, 2010 Ark. 132, 361 S.W.3d 823.] in that instead of attempting to waive a legal presumption, it simply changes custody upon the occurrence of an agreed-upon event. Our appellate courts have regularly and often said that the child's best interest is the paramount consideration in any situation in which the trial court is deciding who

17

should exercise care, custody, and control over the minor child. *See, e.g.*, *Furr v. James*, 2013 Ark. App. 181, at 4, 427 S.W.3d 94, 96 (2013). Self-executing custodial provisions do not even allow a court to pay lip service to a best-interest analysis, and this is in complete derogation of our long-standing principles. *See also* Sarah Abramowicz, *Contractualizing Custody*, 83 Fordham L. Rev. 67, 87 (2014) ("Courts have largely refused to enforce agreements providing for an automatic change of custody upon an agreed-upon event, even where the agreement has been incorporated into a court order.").

*Id.* at 8, 520 S.W.3d at 322 (Murphy, J., concurring).

An automatic change of physical custody from Lyndsay to joint physical custody simply if Zach moves within twenty miles of the children's school would remove the trial court from the determination of whether the change in physical custody is in the children's best interest at the time it occurs. Because an automatic change-of-custody provision does not allow the trial court to determine the children's best interest at some point in the future when the provision is triggered, we hold that it is unenforceable; accordingly, we reverse on this point.

### E. Modification of the Child-Related Expenses

Lyndsay's final argument is that the trial court, without legal authority to modify the parties' contractual agreement, modified the parties' PSA. Paragraphs 17 through 20 of the Decree required Zach to pay half of certain expenses of the children. Paragraphs 33 and 34 of the final order modified these provisions, stating:

33. Fees for agreed-upon extracurricular activities shall be divided equally. Neither party will commit the children to activities that will occur during the other parent's parenting time without agreement.

34. The parents shall equally divide the costs of school supplies, uniforms, and agreed-upon tuition. [Zach] shall no longer be required to pay [Lyndsay] $100.00 each

year for these expenses. The party paying for school supplies, uniforms, and agreed upon tuition shall submit copies of payments to the other party and the other party shall be reimbursed to the other party with documentation within thirty (30) days of receipt of the same through Our Family Wizard.

Lyndsay argues that Zach failed to introduce sufficient evidence to prove that he was unable to pay these expenses. She notes that the financial obligations from the PSA were merged but not incorporated into the Decree.

Lyndsay also argues for the reversal of the trial court's findings set forth as follows in paragraph 42 of the Final Order:

42. There are also modifications of the Decree that are warranted with regard to the sharing of expenses in part because of the coparenting conflict that has come out of these and in part because of the financial burden that these expenses are creating for [Zach]. It is in the best interest of the children to readdress those expenses, as it is important for the parties to have the resources they need to be able to provide clothing, trips, and activities for the children to do. Accordingly, the payment of the children's tuition, uniforms, and school supplies shall be made as stated in Paragraphs 9 and 34, the payment of healthcare expenses shall be split equally as stated in Paragraph 30, and the payment of extracurricular expenses shall be split as stated in Paragraph 33.

Although not providing additional detail regarding paragraph 42, Lyndsay submits that it was clearly erroneous for the trial court to have modified the tuition and activity-fee provisions and urges the trial court's decision should be reversed and remanded with respect to paragraphs 33, 34 and 42 of the final order with instructions to keep the parties' agreement in the Decree from paragraphs 17, 19 and 20 intact.[3]

---

[3]Although Lyndsay states that the trial court modified paragraphs 17 through 20 of the PSA, which also includes the requirement that Zach keep the children on his health insurance (which was changed to Lyndsay's husband's insurance) and that Zach pay $100 to

19

A court may not modify an independent contract that is made part of a divorce decree. *Darcey v. Matthews*, 2017 Ark. App. 692, 537 S.W.3d 780. Questions relating to the construction, operation, and effect of independent property settlement agreements are governed, in general, by the rules and provisions that apply to other contracts generally. *Id.* When contracting parties express their intentions in a written instrument in clear and unambiguous language, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed. *Id.* In *Darcey*, this court held that Matthews's obligation for payment of all medical expenses, set forth in the PSA, was not child support but rather was in addition to, and not in the form of, child support, and modifying it to require each party to pay half was impermissible.

Here, the only thing Lyndsay argues is that the trial court erred in modifying the PSA to read that Zach did not have to pay for tuition or extracurricular-activity fees unless he agreed—the PSA simply stated that the parties would split the cost of the children's private schooling and "camps, sports, sporting equipment and uniforms, school trips, church trips, and other extracurricular activities." It did not specifically state that Zach first had to agree to such activities. Accordingly, pursuant to *Darcey*, we hold that the trial court erred when it modified those provisions, and we specifically reverse the two specific provisions argued by Lyndsay.

Affirmed in part; reversed in part.

---

Lyndsay every July for school supplies, the only point she raises is that the trial court found that "Zach did not have to pay for tuition or extracurricular activity fees unless he agreed."

BARRETT and MURPHY, JJ., agree.

*James, House, Swann & Downing, P.A.*, by: *Kayla M. Applegate*, for appellant.

One brief only.